IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| LEXIE HANDLEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   CASE NO.: 7:20-CV-00235 (WLS) |
| | : |
| WERNER ENTERPRISES, INC., | : |
| | : |
| Defendant. | : |

**ORDER**

Before the Court is Plaintiff's Motion to Exclude Certain Opinions of Chip O'Toole. (Doc. 46.)

**I.   BACKGROUND**

Plaintiff Lexie Handley initially filed this action in Clinch County Superior Court on October 9, 2020. (Doc. 1-2.) Defendants[1] removed this action to this Court on November 13, 2020 based on diversity jurisdiction. (Doc. 1.) Plaintiff alleges that she was severely injured in an automobile accident that occurred on September 20, 2019. (Doc. 1-2 ¶ 1.) Specifically, Plaintiff alleges that a tractor-trailer truck belonging to Defendant Werner Enterprises, Inc. ("Werner") improperly stopped on a highway, which caused Plaintiff's automobile to collide with Werner's truck. *Id.* ¶¶ 7-9; (Doc. 36-3 at 50-51.) She seeks damages for medical and hospital bills, lost wages, pain and suffering, and permanent impairment. (Doc. 1 ¶ 10.)

After discovery closed, several motions were filed by the Parties. (Docs. 33, 39, 40, 42, 43, 44, 46.) Before the Court now is Plaintiff's Motion to Exclude Certain Opinions of Chip O'Toole, Defendant's accident reconstructionist and expert witness. (Doc. 46.) Plaintiff asks that the Court exclude three opinions of O'Toole as unreliable, unhelpful, and speculative.

---

[1] ACE American Ins. Co. ("ACE") was named as a Defendant in this case, but the Court has recently granted ACE's Motion for Summary Judgment as ACE is not a proper party in this suit. (*See* Doc. 76.)

1

Defendants timely responded thereto (Doc. 55), and no reply brief was filed. Accordingly, the motion is ripe for review.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Evidence 702 allows a witness to testify in the form of an expert opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

In other words, "[e]xpert opinion is admissible under the Federal Rules of Evidence so long as the opinion is reliable, relevant, and helpful to the fact finder." *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 577-78 (N.D. Fla. 2009). It is the trial court's responsibility to act as the gatekeeper of expert evidence and ensure that "speculative, unreliable opinions do not reach the jury." *Id.* (citing *Daubert*, 509 U.S. at 592-93). The trial court must "'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Kumho Tire*, 526 U.S. at 152). The burden of establishing qualification, reliability, and helpfulness rests with the proponent of the expert opinion. *Id.* (11th Cir. 2004).

### B. O'Toole's Opinion that Plaintiff Made No Effort to Avoid the Collision

Plaintiff argues that O'Toole's opinion that Plaintiff "made no effort to avoid the collision" is "unreliable and unhelpful to a jury" because it is based on incomplete data and O'Toole admits that it is possible that Plaintiff could have made a "short-timed steering input" that would not have been shown in his data. (Doc. 46 at 5-6.) Plaintiff further argues that O'Toole improperly opines on Plaintiff's mindset and effort, and that O'Toole cannot speak

2

to what Plaintiff's efforts were but only to the movement and position of her vehicle. *Id.* at 6-7.

Defendant counters that technical experts like engineers often base their opinions not on any scientific method but on their "general experience and knowledge after reviewing the evidence." (Doc. 55 at 4) (citing *Milanowicz v. Raymond Corp.*, 148 F.Supp.2d 525, 531 (D.N.J. 2001)). Defendant argues that O'Toole downloaded the objective data from Plaintiff's vehicle which showed that Plaintiff was going at least 53 M.P.H. in a 45 M.P.H zone even assuming the testified-to rate of error and that she did not brake or lift off the throttle in the 4.9 seconds prior to the collision. (Doc. 55 at 6-7.) The physical roadway evidence also showed O'Toole that Plaintiff rear-ended Defendant's tractor-trailer "in a straight line." *Id.* at 7. Thus, O'Toole testified that "the combination of those physical data, physical evidence and damage to the car and trailer suggests that she did not make an effort to avoid." *Id.* at 8.

"With respect to whether an expert's methodology is reliable, [courts] look to a number of factors, including (1) whether the methodology can be and has been tested, (2) whether the theory or technique has been subjected to peer review, (3) the known or potential rate of error of the methodology employed, and (4) whether the methodology is generally accepted." *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1329 (11th Cir. 2014) (citing *Daubert*, 509 U.S. at 593-94.) But "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 141-42.

As other courts have recognized, "motion practice regarding the reliability of accident reconstructionists . . . is highly fact dependent." *Honor v. USA Truck, Inc.*, No. 8:18-cv-677-T-CPT, 2020 U.S. Dist. LEXIS 15409, at *13 n.3 (M.D. Fla. Jan. 30, 2020) Here, it is clear to the Court that O'Toole reasonably based his opinion that Plaintiff made no effort to avoid the collision on the objective and largely undisputed evidence he gathered and reviewed in this case. *See Frazier*, 387 F.3d 1244, 1298 (11th Cir. 2004) ("[T]he less controversial a conclusion, the more likely it is reliable."). Furthermore, the opinion addresses an essential issue in this case using technical evidence and does not improperly touch on Plaintiff's mindset at the time of the collision. Thus, as courts have done in factually similar cases, the Court finds that

3

O'Toole's opinion is reliable, helpful, and admissible. *See, e.g., Rockhill-Anderson v. Deere & Co.*, 994 F. Supp. 2d 1224, 1240 (M.D. Ala. 2014) (finding accident reconstruction opinion testimony admissible because it was "based upon a reliable method of working 'backward' from what is known — *i.e.*, the tractor's final resting point — and upon consideration of relevant factors like the surrounding terrain and physical evidence"); *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 588 (N.D. Fla. 2009) (allowing opinion that was based on parameters established by the "undisputed facts" but excluding testimony that had no factual support).

The other issues raised by Plaintiff, such as the possibility that Plaintiff attempted a maneuver that was not shown in the vehicle data, can be explored on cross examination or in Plaintiff's case-in-chief. *Daubert*, 509 U.S. at 596 (explaining that "[v]igorous cross-examination[] [and] presentation of contrary evidence . . .are the traditional and appropriate means" of attacking evidence).

### C. O'Toole's Opinions regarding Plaintiff's Reaction Time and the Visibility of the Truck

Plaintiff also argues for exclusion of O'Toole's opinion that Plaintiff had a two-second reaction time because it is an unsupported assumption and of his opinion that Plaintiff should have perceived the tractor-trailer's lights as speculative and contradicted by eyewitness testimony. (Doc. 46 at 7-11.)

O'Toole testified that "perception response time [] is the time it takes for the driver to recognize a hazard, identify it as a hazard, and make the physical movement to start braking." (Doc. 36-4 at 31:5-9.) He allowed for a "two-second perception response time" which he testified is "kind of the higher end of the general range" of "one and a half to two seconds." *Id.* at 31-32. He testified that a large vehicle stopped ahead in daylight would be a recognizable hazard subject to that general range, just as children playing, animals, and other smaller objects on the road would be subject to the same range. *Id.* at 32-34, 45. However, in scenarios "where the driver may have less information or the threat may be less obvious," such as a stopped vehicle with no lights on a dark road, the reaction time could be higher, and the analysis delves further into human factor analysis. *Id.* at 33:2-5, 34. But O'Toole testified that the range of 1.5 to 2 seconds is "widely reported through decades of research" and was reasonable for this

4

scenario. *Id.* at 33:13-18, 35:10-21. He further testified that he could not think of anyone in the field of accident reconstruction who would generally proffer a larger range because the range of 1.5 to 2 is based on testing, observations, and literature in the field based on the circumstances of this collision. *Id.* at 43-44. Here, he did not consult his literature or a human factors expert because he was confident that a two-second perception time was reasonable based on the "straightforward, appreciable hazard." *Id.* at 35:19-21, 37.

It is well-established that "'general acceptance in the community is an important factor in evaluating an expert's methodology and courts particularly emphasize this *Daubert* factor when reliability focuses on experience.'" *Frazier*, 387 F.3d at 1298 (holding that "[t]he other *Daubert* factors often recede in importance") (citation omitted). Plaintiff raises questions about the reliability of O'Toole's testimony and suggests that O'Toole could have consulted a human factors expert, but O'Toole has clearly testified that his reliance on a two-second reaction time is based on his experience and the established literature and research on the average response time to a clear hazard and that he did not need to consult a human factors expert based on the circumstances of this case. *Frazier*, 387 F.3d at 1299 ("Although it would be ideal to have a citation to some medical publication to support the proposition, an expert may testify about the standards or common knowledge of the relevant academic community."). Plaintiff has not shown that the accident occurred under circumstances that would render O'Toole's opinion on this issue unreliable, and Defendant has otherwise met its burden to show that this opinion is based on a reliable methodology. *Quiet Tech. DC-8*, 326 F.3d at 1346 ("[T]his is not a case where the jury [is] likely to be swayed by facially authoritative but substantively unsound, unassailable expert evidence.") If Plaintiff believes there are flaws in O'Toole's generally reliable methodology, that is "precisely the role of cross-examination." *Id.* at 1345. Further, Plaintiff did not offer any argument in a reply brief to challenge Werner's arguments. For the foregoing reasons, the Court has no reason to exclude O'Toole's reaction time opinion as unreliable or speculative.

Plaintiff also challenges O'Toole's opinion that the vehicle was a visible and obvious hazard. (Doc. 46 at 9-10.) Plaintiff argues that O'Toole does not know whether and which truck lights were on at the time of the collision, that there is no physical evidence that any truck lights were on, that an eyewitness testified differently, and that jurors can comprehend

5

these issues themselves. (Doc. 46 at 10-11.) O'Toole testified that he classified the truck as "a clear obvious hazard" because it was "a very large truck" that likely had on its brake lights and was stopped or stopping in the left-hand lane approaching an intersection. (*See* Doc. 36-4 at 45-46.) He concluded that based on his analysis of the collision and the truck's position at final rest, the truck driver "pretty much had" to be braking, and that if the brakes were on, then the brake lights were also on. *Id.* 50-56, 60. While O'Toole testified that he did not have data that made him 100% positive that the brake lights were on, the witness testimony and data led him to conclude that the truck was stopped or slowing down and that the brakes lights, therefore, would have been illuminated. *Id.* at 60. Plaintiff challenges this testimony as "mere speculation," but Plaintiff's own eyewitness testified that the truck stopped in the left-hand lane, which is not inconsistent with O'Toole's opinion. (Doc. 46 at 10.) Furthermore, O'Toole testified that the truck's lights did not need to be on because it was "a very large truck" and its "presence was pretty clear otherwise." (Doc. 36-4 at 55.)

"Although 'rulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology,' . . . it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Quite the contrary, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596). O'Toole has provided expert opinions on complex and technical issues, and he has reached these opinions employing reasonable methodologies based on empirical data and largely undisputed facts. That is sufficient. "*Daubert* does not require proof to a certainty . . . ." *Brasher v. Sandoz Pharm. Corp.*, 160 F. Supp. 2d 1291, 1296 (N.D. Ala. 2001). Rather, "expert testimony must be (1) 'grounded in the methods and procedures of science,' (2) authenticated by 'more than subjective belief or unsupported speculation,' and (3) 'supported by appropriate validation -- *i.e.*, "good grounds," based on what is known.'" *Frazier*, 387 F.3d at 1295 (quoting *Daubert*, 509 U.S. at 590). The challenged opinions of O'Toole satisfy that test.

## **CONCLUSION**

Accordingly, Plaintiff's Motion to Exclude Certain Opinions of Chip O'Toole (Doc. 46) is **DENIED**.

**SO ORDERED**, this 25th day of January 2022.

                                           **/s/ W. Louis Sands**
                                           **W. LOUIS SANDS, SR. JUDGE**
                                           **UNITED STATES DISTRICT COURT**