## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| **LEXIE HANDLEY,** | |
| **Plaintiff,** | **CIVIL ACTION FILE NO.** |
| | **7:20-cv-00235-WLS** |
| **v.** | |
| **WERNER ENTERPRISES, INC.,** | |
| **Defendant.** | |

## DEFENDANT'S BRIEF IN SUPPORT OF IT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

COMES NOW, **WERNER ENTERPRISES, INC.** (hereinafter referred to as "Werner" and "Defendant"), and files this motion for judgment as a matter of law or, in the alternative, new trial, showing the Court as follows:

### PRELIMINARY STATEMENT

Issues of negligence are typically left to the jury, but where the evidence so obviously shows, and by her own admission, a plaintiff was injured by her own negligence – as is the case here – a judgment as a matter of law should be granted by the Court.

Plaintiff has failed to prove not one, but two elements of negligence. The evidence admitted in this case shows without a doubt that Plaintiff's injuries were not caused by any purported negligence of Defendant. Instead, this accident and Plaintiff's resulting injuries were caused by one thing and one thing only – Plaintiff's failure to exercise ordinary care and keep a proper lookout ahead. Regardless of whether Defendant may have been negligent, the evidence is that Plaintiff could have avoided that negligence through the exercise of ordinary care. Plaintiff admits

that if she would have been keeping an eye on the road, she would have seen the tractor-trailer and could have avoided the accident.

Additionally, Plaintiff did not carry her burden of proving Defendant breached a duty to her. The only evidence presented by Plaintiff in this regard shows what a tractor-trailer **could** have done. However, there is no evidence in the record that Defendant's driver, Joseph Krisak, failed to exercise ordinary care when getting into the center lane on Valdosta Highway to make a button hook turn onto Bypass Road. She tried, but Plaintiff never elicited any testimony that Krisak fell below the standard of care or violated any rules of the road. Therefore, she failed to prove an essential element of negligence.

Having failed to prove Defendant breached a duty to her and having failed to prove any alleged negligence of Defendant caused her injuries, Plaintiff failed to carry her burden of proof at trial. For these reasons and the reasons discussed here, a directed verdict should be entered in favor of Defendant.

## PLAINTIFF'S EVIDENCE

In her case, Plaintiff called only two witnesses who could provide any evidence regarding the accident and how it may have occurred – herself and Albert Edmonds. Plaintiff did not call any experts and did not call any witness who investigated the accident. For Plaintiff to have established a claim for negligence against Defendant it must rest entirely on the testimony of those two witnesses. A copy of rough transcript of Plaintiff's testimony is attached as Exhibit "A".[1] A copy of Mr. Edmonds' transcript is attached as Exhibit "B". The testimony of Plaintiff and Mr. Edmonds differ to the point of contradiction, but whether taken together, separately, or in any combination, the evidence is that Plaintiff was the sole cause of the accident and could have

---

[1] Defendant understands that a rough transcript is not complete and not proofread. Defendant has ordered the final transcript of the trial and will supplement the record once received.

avoided any possible negligence of Mr. Krisak. Under any combination of testimony, judgment must be entered in favor of Defendant.

1. **Plaintiff's Testimony.**

On direct, Plaintiff gave the following limited description of the accident:

Q. Tell me, you know, if you would real quick, I know you don't remember everything, but talk to me from the right lane and just tell me what you're doing.

A. I was headed back home. I was behind a silver vehicle and right there it speeds up and I decided to get over and I turned to look to make sure nobody was in the other lane behind me and then I turned around and that's really it.

Q. Now, do you have kind of a broken memory of the seconds leading up to that?

A. Yes, sir.

Q. Do you remember seeing the tractor-trailer at all?

A. I don't remember at all. I could have seen it but I don't remember.

(Handley Rough 5/24/22 11:1-15).

Plaintiff's testimony on direct is insufficient to make out her case against Defendant. There is simply no evidence why Plaintiff did not see a tractor-trailer in front of her other than she simply did not look. Lack of memory is not evidence. Her assumption is not evidence. Neither can meet her burden. On cross-examination, Plaintiff's evidence moves farther from meeting her burden.

On cross-examination, Plaintiff provided more details and admitted that she was speeding, following a vehicle at one-car length, and that the following distance limited her ability to see ahead:

Q. So you knew that as you were traveling in that area at 56 miles an hour you knew you were going over the speed limit, didn't you?

A. Yes, sir, I probably realized it.

(Handley Rough 5/24/22 29:21-24).

Q. Okay. And you were following that the silver SUV one car length behind it, right?

A. I'm not an expert on that. It may have been more or less honestly.

Q. Okay. But your testimony at your deposition --

A. Yes, sir.

Q. -- was it one car length?

A. Yes, sir.

(Handley Rough 5/24/22 28:10-17).

Q. Okay. And you were taught that at highway speeds following a vehicle that closely is just not safe, weren't you?

A. Yes, sir.

(Handley Rough 5/24/22 29:4-7).

Okay, as you were following the silver vehicle could you see past that vehicle in front of it? Your answer was: Not very well, sir. Is that what you saw?

A. Yes, sir.

(Handley Rough 5/24/22 27:14-18).

Plaintiff repeatedly admitted that she did not check to see if the left lane was clear before beginning her lane change.

Q. Okay. So you didn't know if there was anything in that lane to your left, correct?

A. I guess not at the time.

Q. You certainly wouldn't have entered that left lane if you could see what was in that left lane, correct?

A. Yes, sir.

(Handley Rough 5/24/22 28:3-9).

Q. So before you started to change lanes you had no idea what was in that lane next to you, did you?

A. I assumed before that I had looked to make sure nothing was in my way at that point but I don't have a solid memory.

Q. And if there was something out there you wouldn't have changed lanes, correct?

A. Sir?

Q. If there was something in that left lane you wouldn't have changed lanes into it?

A. No, sir.

- *4* -

Q. Okay. And actually at your deposition you testified that you assumed that lane was open, do you agree with that?

A. Uh-huh.

Q. Is that a yes?

A. Yes, sir.

…

Q. So you made an assumption there was a clear lane to your left before you entered it, correct?

A. Yes, sir.

Q. So from the time that you started changing lanes until you were fully in the left lane you are not looking at the roadway ahead of you, were you?

A. I was checking my blind spot and then beside me.

…

Q. Okay. But your testimony at your deposition was that you were looking to your side and behind you from the time you started your lane change until you ended the lane change. That isn't going to change today, is it?

A. No, sir.

Q. Okay. It's the same testimony?

A. Yes, sir.

Q. And you'd agreed that's going to take you about 4 to 5 seconds to change lanes?

A. That's what I agreed to in my deposition, yes. I'm not a hundred percent sure though of how long it'd actually take.

(Handley Rough 5/24/22 29:25-32:2).

Ultimately, Plaintiff admitted that she didn't see the trailer until immediately before she rear-ended it.

Q. Okay. You didn't see the trailer that you ran into until immediately before impact, correct?

A. That was from what I've realized now. Hmm, either I don't remember and it's from what I've been told or I did remember it that way.

Q. You remember testifying at your deposition though --

- 5 -

A. Yes, sir.

Q. -- that you saw it at the very last second?

A. I do remember that, yes, sir.

(Handley Rough 5/24/22 33:2-11).

Plaintiff further admitted that she should have ensured the lane was clear before beginning her lane change.

Q. And your testimony is that you started your turn and turned your head to the side and behind you, correct?

A. Yes, sir.

Q. You'd agree with me that the proper way to change lanes is to ensure that the lane is clear before you start the lane change, wouldn't you?

A. Yes, sir.

(Handley Rough 5/25/22 15:1-8). She also admitted that the trailer was in the left lane before she began her lane change.

**Q. Let me ask one before, it might make it easier. You can agree that there was a trailer that was in that left lane before you entered that left lane, correct?**

**A. Yes, sir.**

**Q. Had you looked in that left lane you would have seen that trailer, correct?**

**A. Yes, sir.**

(Handley Rough 5/25/22 16:13-19)(emphasis added). Plaintiff admitted that if she had simply looked she never would have changed lanes and the accident never would have happened.

**Q. As we sit here today you agree that the trailer was there in the left lane before you changed lanes, correct?**

**A. Yes, sir.**

**Q. And you agree that if you would have seen it you would not have changed lanes, correct?**

**A. Yes, sir.**

**Q. And if you hadn't change lanes this accident would not have happened, you would agree with that, correct?**

**A. Yes, sir.**

(Handley Rough 5/25/22 32:12-22) (emphasis added).

Putting everything else aside, Plaintiff further admitted that the speed of the tractor-trailer did not matter because she still would have rear-ended the tractor-trailer if it had been going 20 MPH.

Q. And so if the same thing applies where you did get over and you assumed it was clear and you got over and a vehicle was just going 20 miles an hour --

A. I'd try to hit my brakes.

Q. Right, if you saw it?

A. Yes, sir.

Q. But you'd still hit it because you're going 56 miles an hour, correct?

A. Yes, sir.

(Handley Rough 5/24/22 35:24-36:7).

2. **Mr. Edmonds' Testimony.**

Plaintiff relied heavily on the testimony of Albert Edmonds, who testified as to several different things. First, Mr. Edmonds testified that the tractor-trailer did not have any lights or turn signals activated prior to the accident. (Edmonds 10:24-11:7; 60:22-61:4). Next, he testified that the tractor-trailer was in the center lane and then moved into the left travel lane, where it stopped for 2-3 minutes. (Edmonds 57:20-58:20; 60:2-9). Surprisingly, Mr. Edmonds also testified that the tractor-trailer **backed up** at some point during the several-minutes span that Mr. Edmonds was stopped and watching the tractor-trailer. (Edmonds 56:21-57:16). Putting aside the fact that the evidence makes Mr. Edmonds' testimony impossible, Plaintiff admitted she did not see the tractor-trailer at any point prior to the accident. Therefore, whether the tractor-trailer's signals were on, whether it moved from the center lane and stopped in the right lane, or whether it was stopped in

the left lane, it makes no difference. Plaintiff did not and would not have seen anything the tractor-trailer was doing because she was not keeping a proper lookout of the road ahead of her.

In argument at trial, Plaintiff's counsel several times alluded to Mr. Edmonds' purported testimony that the tractor-trailer jumped out in front of Plaintiff and stopped, purportedly to explain why Plaintiff rear-ended the tractor-trailer in broad day light. However, Mr. Edmonds' testimony – or any other evidence -- simply does not support an argument that Plaintiff could not have seen the tractor-trailer because it suddenly moved in front of Plaintiff.[2]

First, Mr. Edmonds testified that he was stopped at the intersection "for two to three minutes" watching Mr. Krisak stopped in the left travel lane. (Edmonds 49:14-17; Edmonds 60:2-9). Mr. Edmonds could not explain why he simply sat stopped on Bypass Road for "two to three minutes." (Edmonds 46:4-14; 46:25-47:10; 47:23-48:7; 49:6-17). Mr. Edmonds, however, testified he did not see the actual accident, only that he saw Plaintiff's vehicle under the trailer after he pulled off from Bypass Road.  (Edmonds 46:4-14; 60:2-9; 63:5-12; 68:16-69:1).

Plaintiff's counsel argued that when Mr. Edmonds said he was stopped at the intersection of Bypass Road and Valdosta Highway for 2-3 minutes, he really meant just a couple of seconds. That is not evidence. The only evidence was Mr. Edmonds' testimony that he saw the tractor-trailer stopped for 2-3 minutes in the left lane before he turned towards Homerville. (Edmonds 49:6-25; 50:9-12; 53:3-6; 60:2-21). Mr. Edmonds repeatedly testified that he was stopped at the intersection watching the tractor-trailer for 2-3 minutes. Mr. Edmonds never even says the word "seconds" a single time during his examination. That is the only *evidence*. It was Plaintiff's burden and she could have called Mr. Edmonds to trial to correct his testimony. She did not.

---

[2] The Court is also authorized to consider the unrebutted testimony of Chip O'Toole – a qualified accident reconstructionist – that it is physically impossible for a tractor trailer to have moved from the center lane to the left lane and then come to a stop in the time Plaintiff was approaching. Defendant will supplement with the specific line and page once the complete transcript is complete.

Even if the Court accepted Plaintiff's argument as evidence, Mr. Edmonds' description still does not support her case. Even if Mr. Edmonds' saw the tractor-trailer stopped for only a few seconds, the best evidence for Plaintiff is that it was already stopped as Plaintiff approached. Mr. Edmonds testified that the tractor-trailer was already stopped before he began moving again and that he passed Plaintiff as he was returning to Homerville. Either way, Mr. Edmonds testimony in no way supports Plaintiff's argument that the tractor-trailer "jumped out" in front of Ms. Handley.

In spite of Mr. Edmonds' actual testimony, Plaintiff's counsel relied exclusively on Mr. Edmond's testimony and description of the accident, but Plaintiff herself – the party who ultimately brought the case – admitted that if Mr. Edmonds' testimony is to be believed then she could have and would have avoided the accident.

> Q. Right. And so, if the testimony Mr. Edmonds provided was correct you would have avoided that tractor-trailer, no question, correct?
>
> A. Possible -- yes, sir. I'm going to go – I probably would have avoided it completely.
>
> Q. You could have slowed down?
>
> A. I could have slowed down or I could have not got in that lane.

(Handley Rough 5/24/22 39:13-20).

Moreover, the actual evidence provided by Plaintiff renders her counsel's argument moot:

> **Q. Let me ask one before, it might make it easier. You can agree that there was a trailer that was in that left lane before you entered that left lane, correct?**
>
> **A. Yes, sir.**
>
> **Q. Had you looked in that left lane you would have seen that trailer, correct?**
>
> **A. Yes, sir.**

(Handley Rough 5/25/22 16:13-19)(emphasis added).

> **Q. As we sit here today you agree that the trailer was there in the left lane before you changed lanes, correct?**
>
> **A. Yes, sir.**

**Q. And you agree that if you would have seen it you would not have changed lanes, correct?**

**A. Yes, sir.**

**Q. And if you hadn't change lanes this accident would not have happened, you would agree with that, correct?**

**A. Yes, sir.**

(Handley Rough 5/25/22 32:12-22) (emphasis added).

Plaintiff is the only person who testified regarding what she could and could not do – her unambiguous admission is that she could have avoided any negligence by Defendant through the exercise of basic care for her own safety – keeping her eyes on the road and not assuming the road was clear.

## ARGUMENT AND CITATION OF AUTHORITY

### 1. **Legal Standard.**

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

F.R.C.P. 50(a). "The rule authorizes the court to perform its duty to enter judgment as a matter of law at any time during the trial, as soon as it is apparent that either party is unable to carry a burden of proof that is essential to that party's case." *Brackett v. Alabama Dep't of Transp.*, 212 F. App'x 779, 781 (11th Cir. 2006)

In the alternative: "Although the evidence was legally sufficient to take the case to the jury so that a directed verdict was not justified, still, a new trial may be proper where the verdict is against the weight of the evidence." *Urti v. Transp. Com. Corp.*, 479 F.2d 766, 768–69 (5th Cir.

1973). "The law is clear that a district court may grant such a motion if the jury verdict is contrary to the great weight of the evidence." *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988). "Given [a] large amount of uncontradicted evidence, the district court, in exercising its prerogative to reweigh the evidence in considering a motion for new trial, properly determined that the jury's verdict was against the great weight of the evidence." *Id.*

The law in this Circuit has long been that it is duty and prerogative of the Court to grant a new trial when the Court has committed an error or believes that the verdict is wrong. "A district judge 'may grant a new trial if he thinks he has committed error; and he may grant one (and he alone can) because he thinks the verdict is wrong, though supported by some evidence." *Willitt v. Purvis*, 276 F.2d 129, 132 (5th Cir. 1960). Few cases exemplify more the purposes of the rule and the need for a new trial than this one.

**2.   The Claim is Barred By The Avoidance Doctrine – The Only Evidence is that Plaintiff Should Have Been Able to See the Trailer and Plaintiff Admitted That She Could Have Avoided It and the Accident.**

The evidence is undisputed that Plaintiff could have and should have seen the tractor-trailer, and that she could have and should have been able to avoid it. "Under the doctrine of avoidable consequences, [] if the plaintiff by ordinary care could have avoided the consequences to himself [or herself] caused by the defendant's negligence, the plaintiff is not entitled to recover." *Weston v. Dun Transp.*, 304 Ga. App. 84, 87, 695 S.E.2d 279, 282 (2010).

> The plaintiff must exercise ordinary care for [her] own safety, and must by the same degree of care avoid the effect of the defendants' negligence after it becomes apparent to [her] or in the exercise of ordinary care [she] should have learned of it. [The plaintiff] must make use of all [her] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [her].

*Id.* In conformity with Georgia law, the Court instructed the jury that "if the plaintiff, by the exercise of ordinary care, could have avoided the consequences caused by the defendant's negligence, then the plaintiff is not entitled to recover." (Doc. 135 p. 13).

In *Weston v. Dunn*, a widower brought a wrongful death action against several entities for negligently leaving a piece of heavy equipment on the roadway. 304 Ga. App. 84 (2010). The heavy equipment blocked the decedent driver's view of cross traffic. *Id.* The plaintiff's decedent approached the intersection where the piece of heavy equipment was located, stopped at the stop sign, and then pulled in front of a vehicle traveling on the intersecting street. *Id.* A collision occurred and the plaintiff's driver was killed. *Id.*

While there was no direct evidence from the decedent, the court held that the evidence was undisputed that the decedent knew the area and knew cross-traffic was not required to stop; she could see the loader and knew it blocked her view; and still proceeded into the intersection. *Id.* at 88. The court held: "Even assuming that each of the appellees was negligent, and that their negligence combined to create the hazard that the decedent encountered that day, the evidence established as a matter of law that the decedent in the exercise of ordinary care could have avoided the consequences to herself caused by the appellees' negligence." *Id.*

During trial, Plaintiff testified that **she would have been able to avoid the accident had she looked ahead and seen the tractor-trailer.**

> Q. Right. And so, if the testimony Mr. Edmonds provided was correct you would have avoided that tractor-trailer, no question, correct?
> A. Possible -- yes, sir. I'm going to go – I probably would have avoided it completely.
> Q. You could have slowed down?
> A. I could have slowed down or I could have not got in that lane.

(Handley Rough 5/24/22 39:13-20).

Q. Let me ask one before, it might make it easier. You can agree that there was a trailer that was in that left lane before you entered that left lane, correct?

A. Yes, sir.

Q. Had you looked in that left lane you would have seen that trailer, correct?

A. Yes, sir.

(Handley Rough 5/25/22 16:13-19).

**Q. As we sit here today you agree that the trailer was there in the left lane before you changed lanes, correct?**

**A. Yes, sir.**

**Q. And you agree that if you would have seen it you would not have changed lanes, correct?**

**A. Yes, sir.**

**Q. And if you hadn't change lanes this accident would not have happened, you would agree with that, correct?**

**A. Yes, sir.**

(Handley Rough 5/25/22 32:12-22) (emphasis added).

The logical chain is unambiguous and unbroken. Consider again the elements:

The plaintiff must exercise ordinary care for [her] own safety, and must by the same degree of care avoid the effect of the defendants' negligence after it becomes apparent to [her] or in the exercise of ordinary care [she] should have learned of it. [The plaintiff] must make use of all [her] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [her].

*Weston v. Dun Transp.*, 304 Ga. App. 84, 87, 695 S.E.2d 279, 282 (2010). (1) The purported negligence must be apparent because the plaintiff exercising ordinary care for her own safety either did or should have learned of it, and (2) the plaintiff could then avoid the consequences of that negligence.

In her case, Plaintiff contended that the tractor-trailer was stopped in the left lane – that is Defendant's purported negligence. Assuming that to be true, consider the remainder of Plaintiff's evidence.

First, was this purported negligence apparent? The *only* evidence is Plaintiff's admission that the tractor-trailer was there *before* she began changing lanes – therefore Defendants' purported negligence existed.[3] No matter how it is construed, Mr. Edmonds can only support this same proposition.

Second, could Plaintiff through the exercise of due care have learned of the tractor-trailer in her lane – i.e. Defendant's purported negligence? Georgia law explains exactly what constitutes ordinary care. "**A driver has no right to assume that the road ahead of him is clear of traffic, and it is his duty to maintain a diligent lookout ahead.**" *Wallace v. Yarbrough*, 155 Ga.App. 184, 185, 270 S.E.2d 357 (1980) (emphasis added). In fact, the Court instructed the jury as follows: "you should consider that a driver of a vehicle has a duty to keep a proper lookout of the road ahead and has no right to assume that the road ahead of him or her is clear of traffic." (Doc. 135 p. 8). Again, the only evidence is Plaintiff's admission that if she was exercising ordinary care she could have seen the tractor-trailer.[4]

---

[3] **Q. As we sit here today you agree that the trailer was there in the left lane before you changed lanes, correct?**
**A. Yes, sir.**
(Handley Rough 5/25/22 32:12-22).
[4] **Q. Had you looked in that left lane you would have seen that trailer, correct?**
**A. Yes, sir.**
(Handley Rough 5/25/22 16:13-19).

Lastly, could Plaintiff have avoided the accident? Plaintiff's own admission resolves this issue. She admits that she could have avoided the accident.[5] Plaintiff presented no evidence to the contrary.

*Watson v. Dunn* summarizes the avoidance doctrine well and applies to similar facts here. Both in *Watson* and this case, it was undisputed that the plaintiff driver should have been aware of the purported negligence of the defendant in blocking the road. Likewise, it was undisputed that the plaintiff driver could have avoided an accident by simply exercising ordinary care to keep a proper lookout and ensure the path was clear. However, the testimony here demands judgment as a matter of law even more strongly. In *Watson*, the plaintiff driver was deceased and the avoidance doctrine relied solely on circumstantial evidence. Here, the avoidance doctrine indisputably applies based upon Plaintiff's repeated and unambiguous admissions – the best and only person to explain what she could see and what she could avoid. Her direct admissions are the only *evidence*. Counsel speculation, presumptions, and arguments cannot stand in the face of evidence.

The evidence is both clear and undisputed – had Plaintiff been looking at the road ahead, she could have seen the tractor-trailer ahead, and avoided the accident. Plaintiff did not see the tractor-trailer for one very simple reason – she was looking beside and behind her, but not in front of her. Had Plaintiff been exercising ordinary care and looking at the road ahead of her at any time during the five (5) seconds prior to the accident, she would have avoided the accident. The Court instructed the jury that "if the plaintiff, by the exercise of ordinary care, could have avoided the

---

[5] **Q. And you agree that if you would have seen it you would not have changed lanes, correct?**
**A. Yes, sir.**
**Q. And if you hadn't change lanes this accident would not have happened, you would agree with that, correct?**
**A. Yes, sir.**
(Handley Rough 5/25/22 32:12-22).

consequences caused by the defendant's negligence, then the plaintiff is not entitled to recover." (Doc. 135, p. 13). There is no evidence from which a reasonable jury, if following the Court's instructions, could have returned a verdict in favor of Plaintiff.

### 3. There is No But/For Causation - Plaintiff Admitted the Accident Would Have Happened Regardless of Any Alleged Negligence.

Plaintiff admitted that regardless of any negligence by Mr. Krisak – regardless of how fast he was going – she still would have rear-ended him. Of course Plaintiff had to make such an admission because of the obvious result of undisputed facts – Plaintiff was speeding and not looking at the road in front of her – under those circumstances a rear-end collision will happen with any vehicle traveling slower than the 56 MPH Plaintiff was traveling.

The Georgia Supreme Court has explained that "[c]aution is an essential element of … negligence claims[,]" and "[t]o establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury." *Toyo Tire North America Manufacturing, Inc. v. Davis*, 299 Ga. 155, 158, 787 S.E.2d 171 (2016). "[T]o prove causation, the plaintiff must show that the wrongdoing is both a cause in fact and a proximate cause of the injuries. *Strength v. Lovett*, 311 Ga.App. 35, 40, 714 S.E.2d 723 (2011). "The plaintiff must introduce evidence which affords a **reasonable basis** for the conclusion **that it is more likely than not that the conduct of the defendant was the cause in fact of the result.**" *Wolfe v. Carter*, 314 Ga.App. 854, 856-857, 726 S.E.2d 122 (2012) (emphasis added). "A mere possibility of such causation is not enough." *Id.* at 857. Where an event would have occurred in the absence of the defendant's negligence, that negligence cannot be the cause in fact of the event as a matter of law. *Cowart v. Widener*, 287 Ga.App. 622, 631, 697 S.E.2d 779 (2010).

"**A driver has no right to assume that the road ahead of him is clear of traffic, and it is his duty to maintain a diligent lookout ahead**." *Wallace v. Yarbrough*, 155 Ga.App. 184, 185,

270 S.E.2d 357 (1980) (emphasis added). In fact, the Court instructed the jury as follows: "you should consider that a driver of a vehicle has a duty to keep a proper lookout of the road ahead and has no right to assume that the road ahead of him or her is clear of traffic." (Doc. 135 p. 8).

The evidence in this case shows Plaintiff did just that – assumed that the road ahead of her was clear. During trial, Plaintiff testified that she assumed the road ahead of her was clear.

> Q. So before you started to change lanes you had no idea what was in that lane next to you, did you?
>
> A. I assumed before that I had looked to make sure nothing was in my way at that point but I don't have a solid memory.
>
> Q. And if there was something out there you wouldn't have changed lanes, correct?
>
> A. Sir?
>
> Q. If there was something in that left lane you wouldn't have changed lanes into it?
>
> A. No, sir.
>
> Q. Okay. And actually at your deposition you testified that you assumed that lane was open, do you agree with that?
>
> A. Uh-huh.
>
> Q. Is that a yes?
>
> A. Yes, sir.
>
> …
>
> **Q. So you made an assumption there was a clear lane to your left before you entered it, correct?**
>
> **A. Yes, sir.**

(Handley Rough 5/24/22 29:25-30:25) (emphasis added).

The burden of proving the cause of the accident was hers to carry, but she failed to do so. If Plaintiff had been looking at the road ahead of her and was unable to see the tractor-trailer ahead of her, she could argue that Defendant's negligence caused her injuries. But that is not what she testified. Plaintiff testified that she was looking beside and behind her for several seconds while

purportedly changing lanes, but that she was not looking in front of her. She admitted that if she looked ahead, she could have seen the tractor-trailer.

> **Q. As we sit here today you agree that the trailer was there in the left lane before you changed lanes, correct?**
> **A. Yes, sir.**

(Handley Rough 5/25/22 32:12-22).

> **Q. Had you looked in that left lane you would have seen that trailer, correct?**
> **A. Yes, sir.**

(Handley Rough 5/25/22 16:13-19).

All drivers – plaintiffs and defendants – have a duty to keep a proper lookout ahead and cannot assume the road ahead of them is clear. *Wallace*, 155 Ga.App. at 185. If Plaintiff's testimony is accepted as true, then the evidence shows her accident was caused by none other than her assumption that the road ahead was clear of traffic.

If, however, Mr. Edmonds' testimony is accepted as true, then Plaintiff is still unable to recover. Mr. Edmonds testified Plaintiff did not have any other vehicles in front of her and that she was in the left lane the entire time he was stopped for 2-3 minutes.

> Q. All right. When you saw the Toyota, …
> A. … Uh-huh
> Q. … which lane was it in?
> A. In the fast lane.
> Q. It was in the fast lane?
> A. Yes, sir.
> Q. Was there any vehicles in front of it?
> A. No.
> Q. Was there any vehicles behind it?
> A. No.
> Q. Did you see any vehicles in the slow lane?

A. **She was the only one – me and her were the only ones on the road**.

(Edmonds 65:8-21) (emphasis added).

So, if Mr. Edmonds is correct, Plaintiff had an unobstructed view of the tractor-trailer for hundreds – if not thousands – of feet before eventually colliding into the back of it without braking, steering, or slowing down at all. Plaintiff admits that if Mr. Edmonds' testimony is correct, then she could have avoided the accident.

Q. Right. And so, if the testimony Mr. Edmonds provided was correct you would have avoided that tractor-trailer, no question, correct?

A. Possible -- yes, sir. I'm going to go – I probably would have avoided it completely.

Q. You could have slowed down?

A. I could have slowed down or I could have not got in that lane.

(Handley Rough 5/24/22 39:13-20).

It bears repeating that the evidence only points to one conclusion – that Plaintiff was not looking at the road ahead of her. Brake lights, turn lights, or visual cues do not matter. Because Plaintiff, by her own admission, was not looking. Whether she was looking left, right, up, down, or behind her, she was not looking in the one direction she was supposed to – forward.

Because the evidence shows Plaintiff was not keeping a proper lookout ahead and she assumed the road ahead of her was clear of traffic, it cannot be said that any act or omission of Defendant and its driver was the cause of her injuries. Accordingly, a directed verdict in favor of Defendant is proper on this ground.

**4. <u>There Is No Evidence of a Breach.</u>**

Finally, Plaintiff failed to proffer any evidence that Defendant breached a duty to her. "Negligence is not to be presumed, but is a matter of affirmative proof. **In the absence of affirmative proof of negligence, we must presume performance of duty and freedom from**

**negligence**." *Neal v. Miller*, 194 Ga.App. 231, 232, 390 S.E.2d 125 (1990). "Where a plaintiff simply fails to prove his case, the direction of a verdict is proper." *Collins v. Ralston & Ogletree, Inc.*, 186 Ga.App. 583, 584, 367 S.E.2d 861 (1988) (quoting *Carr v. Jacuzzi Bros.*, 133 Ga.App. 70, 74, 210 S.E.2d 16 (1974) (punctuation omitted).

Plaintiff's "evidence" of a breach is shaky at best. Plaintiff called three (3) witnesses during her case-in-chief to provide testimony about the turn Krisak was making at the time of the accident. All of those witnesses – Charlie Stewart, Jason Spikes, and Major Balkcom – only testified that it was "practical" to make a left turn onto Bypass Road from the center lane. But just because something is "practical" does not mean that other ways of doing that thing are negligent. Importantly, **none** of Plaintiff's witnesses testified that it was **impractical** or **negligent** to perform a button hook turn as Krisak testified he was doing. Those witnesses, of course, did not witness the accident or the events leading up to it, and do not know the particular set of circumstances Krisak faced. Even still, none of those witnesses testified that what Krisak did amounted to negligence.

Likewise, Plaintiff presented no evidence that Krisak violated any rules of the road. Plaintiff contends that Krisak should have entered the center turn lane earlier. However, Plaintiff was unable to cite to any rule of the road or other law to support her contention. This is because there is **no Georgia law or rule of the road** that provides a **minimum** distance at which a driver must enter a center lane. That law simply does not exist. Georgia law does, however, provide that a vehicle cannot enter a center lane **more** than 300 feet from where the vehicle will turn left. *See* O.C.G.A. § 40-6-126. The undisputed evidence shows Krisak did not violate this law. As discussed at length at trial, the Georgia Driver's Manual prepared by the State of Georgia states that a driver should enter the turn lane "just prior" to beginning the turn. There is no evidence from Plaintiff's

case that this is not what Mr. Krisak was doing. Beyond Mr. Krisak's own testimony of what he intended to do if he had not been rear-ended, there is no evidence.

There is no evidence in this case that Defendant or Krisak breached any duty to Plaintiff. She did not present evidence from any witness, expert, or investigating officer that what Krisak did was wrong or negligent in any way. Was it practical for Krisak to get into the center lane earlier? Perhaps, but that does not prove Krisak breached a duty. It only shows what he **could** have done, as opposed to what he **should** have done. A breach cannot be proven by showing what **could** have been done. Plaintiff must show that what Krisak did was **wrong** under the circumstances. It was her burden to prove breach, and she failed to do so. Therefore, a directed verdict should be granted in favor of Defendant on this ground.

## <u>CONCLUSION</u>

This case is a textbook example of when a directed verdict should be granted in favor of Defendant. There are few, if any, examples of a directed verdict being denied where the evidence is this heavily slanted towards a defendant. If this were not a case to grant a directed verdict in favor of a defendant, there would never be a case where directing a verdict would be appropriate. The evidence is plain and palpable. Plaintiff failed to carry her burden on two (2) essential elements of negligence – causation and breach. Not only that, but the evidence shows – **and Plaintiff admitted** – that she could have avoided the accident had she exercised ordinary care. For these reasons and the reasons discussed herein, a directed verdict should be granted in favor of Defendant.

Respectfully submitted this <u>3rd</u> day of June, 2022.

**HALL BOOTH SMITH, P.C.**

*/s/ Sean B. Cox*

SCOTT H. MOULTON
Georgia State Bar No. 974237

SEAN B. COX
Georgia State Bar No. 664108
DANIELL R. FINK
Georgia State Bar No. 540374
*Attorneys for Defendant*

191 Peachtree Street NE, Suite 2900
Atlanta, GA  30303-1775
T:  404.954.5000
F:  404.954.5020
smoulton@hallboothsmith.com
scox@hallboothsmith.com
dfink@hallboothsmith.com

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **LEXIE HANDLEY,** | |
| **Plaintiff,** | **CIVIL ACTION FILE NO.** |
| | **7:20-cv-00235-WLS** |
| **v.** | |
| **WERNER ENTERPRISES, INC.,** | |
| **Defendant.** | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I have served a copy of the within and foregoing **DEFENDANT'S BRIEF IN SUPPORT OF IT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL** upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows and/or filing said document with the CM/ECF system which will automatically send electronic notification to the following:

Brent J. Savage
Zachary P. Sprouse
Savage, Turner, Pinckney & Savage
Post Office Box 10600
Savannah, Georgia 31412
bsavage@savagelawfirm.net
zsprouse@savagelawfirm.net

Berrien Sutton
172 West Dame Avenue
Homerville, Georgia 31634
berrien@suttonlawllc.com

This <u>3rd</u> day of June, 2022.

[SIGNATURE PAGE FOLLOWS]

**HALL BOOTH SMITH, P.C.**

*/s/ Sean B. Cox*
_____
SCOTT H. MOULTON
Georgia State Bar No. 974237
SEAN B. COX
Georgia State Bar No. 664108
DANIELL R. FINK
Georgia State Bar No. 540374
*Attorneys for Defendant*

191 Peachtree Street, N.E., Suite 2900
Atlanta, Georgia 30303-1775
Phone:  (404) 954-5000
Fax: (404) 954-5020
smoulton@hallboothsmith.com
scox@hallboothsmith.com
dfink@hallboothsmith.com