IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| LEXIE HANDLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:20-CV-00235 (WLS) |
| | : | |
| WERNER ENTERPRISES, INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER**

Before the Court is a "Motion for Mistrial or New Trial," filed by Defendant Werner Enterprises, Inc. ("Werner"). (Doc. 144.) Plaintiff has timely responded (Doc. 149), and Werner has timely filed a reply brief (Doc. 157). Thus, the motion is ripe for review.

**I.    BACKGROUND**

Plaintiff Lexie Handley filed this action in Clinch County Superior Court on October 9, 2020. (Doc. 1-2.) The initial Defendants, Werner and ACE American Insurance Company ("ACE") removed this action to this Court on November 13, 2020 based on diversity jurisdiction. (Doc. 1.) Plaintiff alleged that she was severely injured in an automobile accident that occurred on September 20, 2019. (Doc. 1-2 ¶ 1.) Specifically, Plaintiff alleged that a tractor-trailer truck belonging to Defendant Werner Enterprises, Inc. ("Werner") improperly stopped on a highway, which caused Plaintiff's automobile to collide with Werner's truck. *Id.* ¶¶ 7-9; (Doc. 36-3 at 50-51.) Plaintiff sought damages for medical and hospital bills, lost wages, pain and suffering, and permanent impairment. (Doc. 1 ¶ 10.)

Discovery closed on September 29, 2021 (Doc. 24), and several dispositive and witness-related motions were filed by the Parties. (Docs. 33, 39, 40, 42, 43, 44, 46.) On January 11,

1

2022, the Court granted ACE's motion for summary judgment finding that because ACE was an excess liability insurance carrier only, ACE was not a proper named defendant subject to suit in a direct action. (Doc. 76.) Thereafter, the Court resolved the Parties' other motions and denied Werner's motion for summary judgment (Doc. 86).

A pretrial conference was held in this case on April 14, 2022, and the jury trial commenced on the morning of Monday, May 23, 2022. (*See* Docs. 112 & 120.) The trial lasted four days, and the jury began deliberations on the afternoon of Thursday, May 26, 2022. (*See* Doc. 141.) Prior to deliberations, counsel for both Parties were provided with a draft copy of the Court's intended jury instructions and verdict form. No objections were raised to the verdict form, but some changes were requested on and made to the jury instructions.

Prior to closing arguments, the Court instructed the jury on the law and began by stating that the jury "must follow and apply all of the law . . . whether you agree with that law or not—and you must follow all of my instructions as a whole." (Doc. 135 at 1.) The jury was instructed: "The Plaintiff in this case is Lexie Handley. The Defendant is Werner Enterprises, Inc. In these instructions, I may refer to Ms. Handley as the 'Plaintiff' and to Werner Enterprises as the 'Defendant.'" *Id.* at 2. The jury also was instructed that they "should not consider evidence that has not been admitted into the record, and [] should not consider a party's insurance coverage, if any, in reaching [] conclusions in this case except as [] may be instructed by the Court and only for such purpose." *Id.* at 2. The jury was further instructed: "You should also not consider any party's insurance coverage in determining damages in this case." *Id.* at 17. Twelve copies of the jury instructions were printed—one for each juror—and each copy bore the correct caption in this case: LEXIE HANDLEY, Plaintiff, v. WERNER

2

ENTERPRISES, INC., Defendant. (Doc. 135.) A single verdict form was provided to the jury.

Once the jury returned with its unanimous verdict, the verdict form was read aloud and inspected by the Parties' counsel. The verdict form inadvertently bore an older caption: "LEXIE HANDLEY, Plaintiff, v. WERNER ENTERPRISES, INC. and ACE AMERICAN INS. CO., Defendants." (Doc. 136-1.) Werner's counsel objected to the verdict form's inclusion of ACE as a named Defendant, so the Court instructed the jurors to "return to the jury room and discuss whether or not when you refer to defendant here you are referring to Werner Enterprises, Inc. in accordance with the Court's instructions and not Ace American Insurance Company." (Doc. 155 at 261:7-10.) When the jury returned, the foreperson announced that the verdict "was directly to Werner" only and not Werner and ACE, and no juror had a different understanding. *Id.* at 265-266.

Werner argued that the inclusion of ACE on the verdict form was inherently prejudicial, moved for a mistrial on that basis, and asked that the verdict form not be filed until Werner had an opportunity to brief the motion for a mistrial.[1] (*See* Doc. 155 at 263, 269.) The Court ordered expedited briefing on Werner's motion for mistrial, which has now been fully briefed.[2]

---

[1] The Court withheld the filing of the verdict form upon Werner objecting and moving for a mistrial after the Court inquired whether there was any objection to the form of the verdict to allow counsel a fair opportunity to perfect and brief the matter.

[2] Werner did not orally move for a "new trial," only a mistrial. (*See* Doc. 155.) Werner also orally made and has filed in writing a motion related to the insufficiency of the evidence (Doc. 147), which the Court will address separately after that motion ripens.

3

## II. ANALYSIS

In support of its motion, Werner cites Federal Rule of Civil Procedure 59, which provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: [] after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). Although the inclusion of prejudicial information at trial can warrant a new trial, the Eleventh Circuit Court of Appeals has held:

> Not every evidentiary error, of course, requires reversal. Our cases, consistent with Rule 61 of the Federal Rules of Civil Procedure, hold that a new trial is warranted only where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice'). [] Notwithstanding the difference in terminology, the inquiry is always directed to the same central question - how much of an effect did the improperly admitted or excluded evidence have on the verdict?
> To answer this question, we look to a number of factors, including the number of errors, the closeness of the factual disputes (i.e., the strength of the evidence on the issues affected by the error), and the prejudicial effect of the evidence at issue. We also consider whether [one] intentionally elicited the evidence, whether [one] focused on the evidence during the trial, and whether any cautionary or limiting instructions were given.

*PEAT, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004) (citations omitted).

Courts must review purportedly prejudicial evidence or remarks in their entirety, in context, and must consider the objections raised and the curative instructions given to determine whether the remarks were "'such as to impair gravely the calm and dispassionate consideration of the case by the jury.'" *Vinson v. Koch Foods of Ala., LLC*, 12 F.4th 1270, 1277 (U.S. 11th Cir. 2021) (quoting *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021)); *S. Grande View Dev. Co. v. City of Alabaster*, 1 F.4th 1299, 1305 (U.S. 11th Cir. 2021) ("[E]ven a clearly erroneous evidentiary ruling will be affirmed if harmless. An error is harmless unless it affects

4

the substantial rights of the parties."); *see also Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1483 (11th Cir. 1997) (stating that the court "will not overturn an evidentiary ruling unless the moving party proves a substantial prejudicial effect."). A court's erroneous evidentiary ruling is harmless where the jury's verdict is supported by substantial, permissible evidence produced at trial. *S. Grande View Dev. Co.*, 1 F.4th at 1313. Ultimately, it is in the district court's discretion whether to grant a motion for a new trial, and deference is afforded to a district court's "first-hand experience of the . . . context of the trial." *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 923 (11th Cir. 1991) (citation omitted).

Werner argues that the inclusion of ACE as a Defendant on the verdict form was inherently prejudicial because of its presence on the verdict form and because the "vast weight of the evidence supported a defense verdict." (*See* Doc. 144 at 5.) Werner further argues that the prejudice could not be cured and that, at best, a juror could have "believed that the Court's later instructions on the verdict form prevailed." *Id.* at 6. Plaintiff responds with various arguments that a new trial is not warranted, including: that Werner's Exhibit 1 admitted at trial listed ACE American Insurance Company (although the exhibit redacted other personal information), juries generally know that big trucking companies have insurance, the mere presence of "INS." on the verdict form could not have created the prejudice asserted by Werner, and similar motions for mistrial have been denied because the caption on a verdict form is generally considered surplusage and a curative instruction is deemed to have cured any error. (Doc. 149.)

Evidence of insurance coverage can be prejudicial, but Werner has cited no case in which a court in the Eleventh Circuit has ever granted a mistrial or new trial on the basis of erroneously admitted evidence of or statements of a party's insurance coverage. Rather,

5

Werner emphasizes and quotes significantly from a 1985 Fifth Circuit opinion in which the trial court had erroneously allowed a defendant to admit evidence of its inability to pay a judgment by "introduc[ing] evidence of the limits of his insurance coverage, $5,000 per person and $10,000 per accident, amounts clearly inadequate to compensate any of the plaintiffs," and then also allowed the plaintiffs to admit the policy limit of the other defendant of $500,000. *Reed v. Gen. Motors Corp.*, 773 F.2d 660, 662 (5th Cir. 1985). The circuit court concluded that although the existence of insurance was admissible in the case, the trial court was not permitted "to admit the amount of coverage" and that such an admission was not harmless. *Id.* at 663. There, the jury awarded $450,000 but would have known that "the seriously injured plaintiffs would share only $10,000" if they found only the first defendant liable. *Id.* at 662, 664. Thus, the circuit court concluded: "The reference to insurance coverage was not accidental or fleeting. The plaintiffs' counsel argued for admissibility of the limits in [the second defendant's] policy, persuaded the district court, and made a deliberate effort to inform the jury of the amount. Considering how important the matter was considered to be, we cannot overlook it now as harmless even as to the issue of [the second defendant's] liability." *Id.* at 664. The circumstances of *Reed* stand in stark contrast to the circumstances presented at the trial here.

Here, the reference to insurance coverage was accidental and fleeting, was never admitted as evidence (aside from in Defendant's Exhibit 1) or emphasized by the Court or any party, was not a meaningful aspect of the case at any point of the trial, was specifically instructed not to be considered, and was not necessarily ever seen or understood by any juror. The minimal nature of its presence on the verdict form is bolstered by the fact that no juror

6

intended that their verdict be entered against Werner and ACE even though both Werner and ACE were inadvertently listed as Defendants in the caption of the verdict form.

For the same reasons, the inadvertent error does not warrant a new trial even under the binding Eleventh Circuit precedent that Werner cites. In *Peat*, the Eleventh Circuit Court of Appeals instructs courts to look at "a number of factors" when deciding whether substantial prejudice has occurred, "including the number of errors, the closeness of the factual disputes (i.e., the strength of the evidence on the issues affected by the error), and the prejudicial effect of the evidence at issue. We also consider whether [one] intentionally elicited the evidence, whether [one] focused on the evidence during the trial, and whether any cautionary or limiting instructions were given." 378 F.3d at 1162; *see also Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986) (same). Considering those factors, the Court cannot find that substantial prejudice resulted from the error in the caption on the verdict form. It was a single, inadvertent written error which received no focus during the trial and on which the jury was specifically instructed not to consider at all or for the purpose of determining damages. Defendant's argument would have the Court believe that the jury disregarded the Court's oral instructions before, during, and at the conclusion of the evidence and misconstrued the evidence and testimony presented over four days based solely on the presence of "ACE American. Ins. Co" in the caption on the verdict form. This the Court cannot do.

"Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions." *United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993). "A curative instruction purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions." *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (internal quotation marks omitted). Courts routinely instruct jurors not to consider prejudicial remarks,

7

evidence, or even entire witnesses or co-defendants, and the jury is presumed to do so. *See*, *e.g.*, *Wiedeman v. Canal Ins. Co.*, 770 F. App'x 497, 501 (11th Cir. 2019) (finding no abuse of discretion in denying motion for mistrial based on a "single statement" on which the judge instructed the jury not to consider after the jury asked a question about it); *Hammonds v. Comm'r, Ala. Dep't of Corr.*, 712 F. App'x 841, 854 (11th Cir. 2017) (finding curative instruction sufficient at a criminal trial where, although it could be read to be confusing and contradictory, "the instruction's curative context lowers the risk that the jury would hyper-technically interpret it . . ." and its result, though imperfect, was "not prejudicial"); *German v. Inch*, No. 17-62010-CIV-ALTMAN/Reid, 2020 U.S. Dist. LEXIS 156239, at *73 (S.D. Fla. Aug. 27, 2020) (finding no error in court's inclusion of co-defendants not on trial in its jury instructions where the court also instructed the jury not to consider the co-defendants but to enter a verdict solely as to the defendant on trial).

And the timing here is ultimately inconsequential. Jury instructions are always given before juries begin deliberations, and juries are expected (and were instructed in this case) to follow the court's complete instructions during deliberations and to ask questions directly to the court if a question about the instructions arose. (*See* Doc. 135 at 1, 18.) Furthermore, contrary to Werner's argument, the verdict form contained no instructions regarding insurance or an insurance company such that the jury could be confused about how to consider the existence of "ACE American Ins. Co." on the caption of the verdict form. The only instructions regarding insurance were given orally by the Court prior to deliberations and were given to each juror in writing in the twelve copies of the document titled "Jury Instructions." (Doc. 135.)

8

Werner merely speculates that the jury must have (1) noticed the caption and (2) improperly entered a verdict based on that caption. This argument fails. It is well-established that juries are presumed to follow a court's instructions absent an indication that they did not. *Gonzalez v. Batmasian*, 734 F. App'x 677, 683-84 (11th Cir. 2018); *German*, 2020 U.S. Dist. LEXIS 156239, at *73 (denying motion for mistrial where defendant "provided nothing but baseless speculation for his view that the jurors ignored their oaths and disregarded the court's instructions"). Here, there is no indication that the jury disregarded the Court's instructions. This is not a case where the record reflects that the jury heard improper remarks and received no instruction on them or where the jury heard a counsel's arguments about the prejudice of an improper remark and then heard the Court flatly reject that argument in the jury's presence. *Cf., e.g., Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir. 1988); *Vineyard v. Cty. of Murray, Ga.*, 990 F.2d 1207, 1213 (11th Cir. 1993). Here, the Court and Parties were made aware of the error simultaneously after the jury had been explicitly instructed not to consider any party's insurance, and any doubt about the prejudice of the error was resolved when the jury was specifically made aware of the error and nonetheless returned to the courtroom to answer that regardless of that error, their verdict was entered "directly to Werner." (Doc. 155 at 260-61, 265-66.) No juror had a different understanding. *Id.* "[T]he likelihood that the jury's deliberation was 'impair[ed] gravely' by [the error] was, accordingly, significantly lower than" in cases where a new trial has been granted. *Gonzalez*, 734 F. App'x at 684 (citations omitted).

Nor can it be true that a jury is unduly prejudiced by the sight of an insurance company as a co-defendant on a verdict form. Georgia's direct-action statutes authorizes plaintiffs to join insurance companies directly in the suit under O.C.G.A.§ 40-1-112 and O.C.G.A. § 40-2-140. As a result, insurance companies often appear as defendants on captions before juries,

including in this Court, and it is not prejudicial for such captions to exist. *See Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1315 (11th Cir. 2017) (rejecting argument of prejudice where similar cases "will always implicate this concern, and this Court has affirmed [the issue] in these kinds of cases before"). Moreover, juries have general knowledge from their own experiences, including knowledge that drivers must generally have insurance, but they are instructed that during deliberations they can "consider only the evidence—that is, the testimony of the witnesses and the exhibits" that the court admitted into the record. (*See* Doc. 135 at 2.) In every trial, a jury is presumed to follow that instruction.

Furthermore, while the Court is not addressing Werner's motion for a directed verdict based on the insufficiency of the evidence, the Court finds for purposes of the instant motion that there was sufficient evidence to support the verdict entered. The evidence in favor of Plaintiff was significant and persuasive in its volume and in its quality. For example:

- Defendant's truck driver stopped or slowed significantly in the left fast travel lane as opposed to the available center turn lane;

- A sole neutral eyewitness to the collision testified that Defendant's truck driver was obviously lost and that his driving was so erratic that the witness himself stopped and watched him for a period of minutes before driving on. According to the witness, the truck driver's driving was so erratic that it caused the Plaintiff to collide into the truck;

- Plaintiff, the eyewitness, two employees from a building at the subject intersection, and an experienced truck driver were familiar with the area and were accustomed to trucks stopping to turn from the center turning lane only;

10

- Plaintiff took her eyes of the road for seconds to look in her blind spot while moving from the right travel lane (where her view of the truck was obscured) to the left travel lane;

- A supervising officer was immediately concerned that the truck was in the left travel lane rather than the center turn lane, where it was proper to make the turn, and asked his subordinate to look into the collision again;

- Defendant's driver testified that he was from Texas and had stopped just prior to the collision and received directions about his next left turn.

Based on this evidence, a jury could certainly have found Werner negligent.

To the extent Werner takes issue with the damages, the jury was presented evidence of Plaintiff's relatively young age and the significant physical, mental, and psychological changes she experienced since the collision. In his closing argument, plaintiff's counsel highlighted those injuries and discussed potential monetary sums that the jury could consider: "[T]he numbers are in your control exclusively. You can do anything you want. You don't have to follow what I'm saying, but this is what we do sometimes, you know, ten dollars an hour, 16 waking hours a day for 58 years, $3,387,200; $20 an hour, if you wanted to use that, it's more. You can use any numbers you want." (Doc. 155 at 241:18-24.) Here, the jury entered a verdict of $6,000,000, which was well within the range argued by Plaintiff's counsel, and it was a sum supported by the evidence. Furthermore, the jury was instructed that the Court would reduce Plaintiff's monetary damages proportionate to any percentage of fault they attributed to her (*see* Doc. 135 at 16), and the jury attributed 40% fault to Plaintiff.

11

Under these circumstances, the Court cannot grant a mistrial or new trial, and it could be an abuse of discretion to grant such a motion. "[C]ertain circumstances require a trial court to grant even greater deference to a jury verdict." *Clyce v. St. Paul Fire & Marine Ins. Co.*, 850 F.2d 1398, 1402 (11th Cir. 1987) (reversing and remanding grant of new trial because "the trial court inappropriately and improvidently granted the new trial motion in light of existing evidence" where the verdict amount was supported by the evidence) (citing *Fondren v. Allstate Ins. Co.*, 790 F.2d 1533, 1534 n.3 (11th Cir. 1986)). "When the trial involves simple issues and highly disputed facts, and there is an absence of 'pernicious occurrences,' trial courts should be considerably less inclined to disturb a jury verdict." *Fondren*, 790 F.2d at 1534 n.3 (citation omitted). Like *Clyce*, this is such a case. The evidence was indisputable that Defendant's truck driver attempted to turn left from the left travel lane rather than the available center turn lane, and Plaintiff testified that she did not realize the truck was in the left travel lane when she changed lanes. These facts are simple. The Parties sharply dispute what a jury should infer from these facts, but the verdict the jury reached was amply supported by the evidence. As such, there is no sound basis to conclude that the verdict should be set aside.

The standard for granting a new trial is not solely whether a verdict was favorable to the nonmoving party, but courts must consider a plethora of factors in determining whether substantial prejudice existed. This Court must consider the totality of the trial and the context of the challenged error in determining whether Werner's motion for mistrial or new trial is due to be granted or denied. Having done so, this Court joins the numerous other courts in this Circuit who have concluded that a new trial should not be granted where the evidence is sufficient to support the verdict and the defendant's argument amounts essentially to post-hoc speculation. *See, e.g.*, *Eghnayem*, 873 F.3d at 1314-15 (affirming denial of new trial and

finding the district court "correct" in concluding that the defendant "speculated as to the reason for the compensatory awards based on the end result[]" where the plaintiffs were awarded "similar damages awards in the amounts of $6,766,666, $6,722,222, $6,722,222, and $6,533,333"); *S. Grande View Dev. Co.*, 1 F.4th at 1313 (finding "any error here harmless because substantial, permissible evidence produced at trial supports the jury's verdict" and where key facts were undisputed); *Sanchez v. Disc. Rock & Sand Inc.*, No. 4:18-cv-10097-KMM, 2022 U.S. Dist. LEXIS 54878, at *23-24 (S.D. Fla. Feb. 9, 2022) ("[A]ny prejudice arising from this instruction was not so prejudicial as to warrant a new trial—given the great deal of evidence of Blanco's negligence"); *Barthelus v. G4S Gov't Sols., Inc.*, No. 12-22945-CIV, 2015 WL 11254296, at *2 (S.D. Fla. July 28, 2015) ("[N]ew trials should not be granted on the basis of asserted errors which in the circumstances were not prejudicial."); *Vinson*, 12 F.4th at 1278 ("Considering the length of the trial, the shortness of the offending remarks, the context of the [offending remarks] . . ., and the curative instructions offered, we cannot find that the District Court abused its discretion by denying [the] motions for mistrial and a new trial.")

Indeed, Federal Rule of Civil Procedure 61, which courts consider along with Rule 59, provides: "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Here, justice does not require granting Werner a new trial. Viewing the challenged error in the context of a four-day trial in which it was clearly stated who the Parties were, that the jury was not to consider insurance coverage, and where the jury confirmed that their verdict was not entered against ACE, it is clear to the Court that Werner's substantial

13

rights were not affected by the caption on the verdict form. Thus, a new trial is not warranted on that basis.

## CONCLUSION

For the foregoing reasons, Werner's Motion for Mistrial or New Trial (Doc. 144) is **DENIED**. The verdict and judgment will be entered.

**SO ORDERED**, this 17th day of June 2022.

        **/s/ W. Louis Sands**
        **W. LOUIS SANDS, SR. JUDGE**
        **UNITED STATES DISTRICT COURT**