IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| LEXIE HANDLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO: 7:20-cv-235  (WLS) |
| | : | |
| WERNER ENTERPRISES, INC., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW OR,
IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

This matter is before the Court on Defendant Werner Enterprises, Inc.'s ("Werner")
Brief in Support of Its Motion for Judgment as a Matter of Law (Doc. 147) filed June 3, 2022.
The brief relates to Werner's oral motion under Fed. R. Civ. P. 50(a) made at the trial of this
matter at the close of Plaintiff's case and renewed at the close of all evidence prior to the case
being submitted to the jury ("Motion for JMOL A").[1]  Also before the Court is Werner's Rule
50(b) Motion for Judgment as a Matter of Law or in the Alternative Rule 59 Motion for New
Trial (Doc. 170) filed July 15, 2022 ("Motion for JMOL B and New Trial" and together with
the Motion for JMOL A, the "Motions").  Plaintiff Lexie Handley ("Handley") filed timely
responses in opposition to the Motions (Docs. 164, 173), and Werner filed timely reply briefs
(Docs. 166, 175).  Thus, the Motions are ripe for review.

---

[1] Werner titled the brief in support of the Motion for JMOL A filed under Rule 50(a) as "Defendant's Brief in
Support of It's [sic] Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial."
However, a motion for new trial is not a remedy available under Rule 50(a).  *See* Fed. R. Civ. P. 50(a).  Further,
Werner did not request relief in the form of a new trial at any time during the trial of this matter, nor does the
brief in support of the Motion for JMOL A (Doc. 147) address such relief.  The Court addresses Werner's
alternate Rule 59 motion for new trial as properly requested in Werner's Motion for JMOL B and New Trial.

## I.   PROCEDURAL HISTORY

Handley filed this action in Clinch County Superior Court on October 9, 2020.  (Doc. 1-2.)  The initial Defendants, Werner and ACE American Insurance Company ("ACE") removed this action to this Court on November 13, 2020, based on diversity jurisdiction. (Doc. 1.)   Handley alleged that she was severely injured in an automobile accident that occurred on September 20, 2019.  (Doc. 1-2 ¶ 1.)  Specifically, Handley alleged that a tractor-trailer truck owned by Werner and driven by Joseph Krisak ("Krisak"), Werner's employee, improperly stopped on a highway, causing Handley's automobile to collide with Werner's truck.  (*Id.* ¶¶ 7-9; Doc. 36-3 at 50-51.)  Handley sought damages for medical and hospital bills, lost wages, pain and suffering, and permanent impairment.  (Doc. 1 ¶ 10.)

Discovery closed on September 29, 2021 (Doc. 24), and dispositive motions were filed by ACE (Doc. 43) and Werner (Doc. 33).  On January 11, 2022, the Court granted ACE's motion for summary judgment finding that because ACE was an excess liability insurance carrier only, ACE was not a proper named defendant subject to suit in a direct action. (Doc. 76.)

In its motion for summary judgment, Werner asserted that Handley had failed to produce evidence that Krisak was negligent, violated any traffic laws, or caused the collision. On March 17, 2022, the Court denied Werner's motion for summary judgment.  (Doc. 86).

A pretrial conference was held in this case on April 14, 2022, and the jury trial commenced on the morning of Monday, May 23, 2022.  (*See* Docs. 112 & 120.)   The trial lasted four days, and the jury began deliberations in the afternoon of Thursday, May 26, 2022. (*See* Doc. 141.)

At the close of Handley's case, Werner moved for judgment as a matter of law under Fed. R. Civ. P. 50(a)[2] on the basis that Handley had not presented evidence on all elements of her negligence action.   (Doc. 154 at 108:22—117:16; 121:9—122:3.)   Specifically, Werner asserted Handley did not present sufficient evidence to show a "causal connection between any alleged breach of Mr. Krisak and Werner and [Handley's] injuries.  Instead, the cause of [Handley's] injuries was her own negligence and failure to keep a lookout ahead."  (Doc. 154

---

[2] Werner's counsel initially referred to Fed. R. Civ. P. 58.  He corrected the reference during his argument to Fed. R. Civ. P. 50.  (Doc. 154 at 108-09).

at 117:7—16.)  Handley's counsel presented arguments in opposition (*Id.* at 117:19—121:7), and the Court stated that it would take the Motion for JMOL A "under advisement as made at the end of the evidence and will defer a ruling on it, but will allow the case to go forward to the jury for that purpose."  (Doc. 154 at 122:6-9.)

At the close of all evidence in the case and prior to the case being submitted to the jury, Werner renewed the Motion for JMOL A.  (*See* Doc. 155 at 167:17—168:17.)  The Court reiterated that the matter was under advisement and that it would rule on the motion "based on the time of the motion and the evidence as it appeared at that time, not anything subsequent."  (*Id.* at 167:20—24.)

Prior to closing arguments, the Court instructed the jury on the law stating that the jury "must follow and apply all of the law . . . whether you agree with that law or not—and you must . . . follow all of my instructions as a whole."  (Doc. 135 at 1; Doc. 155 at 169:25—170:4.) The Court fully and carefully instructed the jury on its duty to consider all the evidence and on weighing conflicting evidence, stating:

> Your own recollection and interpretation of the evidence is what matters.
>
> Now, in saying that you must consider all of the evidence I do not mean that you must accept all of the evidence as true or accurate.  You should decide whether you believe what each witness had to say and how important that testimony was.
>
> In making that decision you may believe or disbelieve any witness in whole or in part.  Also the number of witnesses testifying concerning any particular fact in dispute is not controlling.

Doc. 155 at 173:13—24.  The Court also fully and carefully instructed the jury on how to assess its findings, stating:

> For a plaintiff to prevail in a negligence case she must prove by a preponderance of the evidence[3] that the negligence, if any, of the defendant was a proximate cause[4] of the injuries to the plaintiff.

---

[3] The Court explained to the jury that "A preponderance of evidence simply means an amount of evidence that is enough to persuade you that the plaintiff's claim is more likely true than not true."  (Doc. 155 at 177:2—5.)

[4] The Court explained the meaning of "proximate cause" to the jury, stating:  "[W]hen I use the expression proximate cause I mean a cause that in the natural or ordinary course of events produced the plaintiff's injury. It need not be the only cause nor the last or nearest cause.  It is sufficient if it combines with another cause resulting in the injury."  (Doc. 155 at 186:24—187:4.)

To recover a plaintiff must prove that the defendant was negligent in one or more ways alleged. . . .

If you find no negligence at all on the part of the defendant then the plaintiff's case against the defendant ends. Also, before a plaintiff can recover monetary damages from a defendant in a negligence case there must be injury to the plaintiff resulting from the defendant's negligence.

*Id.* at 178:9—23.

In evaluating a driver's negligence you may use your own experience and reasoning to determine whether the driver exercised the degree of care that an ordinarily careful or prudent person would have used under the circumstances similar to those that existed at the time of the collision in this case.

*Id.* at 179:17—22.

In determining whether a driver was negligent you should consider that a driver of a vehicle has a duty to keep a proper lookout of the road ahead and has no right to assume that the road ahead of him or her is clear of traffic.

You may also consider whether the driver violated laws or regulations and whether that violation contributed to this accident. . . .

. . . .

In other words, if you find that a driver failed to exercise that degree of care that an ordinarily careful person would have exercised under the circumstances that would be sufficient to find the driver was negligent regardless of whether you find that the driver was negligent per se by violating a law.

*Id.* at 180:5—9; 180:21—181:2. The Court instructed the jury on the issues of avoidance and comparative negligence:

A defendant may be held liable for an injury when that defendant commits a negligent act that puts other forces in motion or operation resulting in the injury when such other forces are the natural and probable result of the act that the defendant committed and that reasonably should have been foreseen by the defendant.

. . . .

I also instruct you that the plaintiff may not recover for injuries or disabilities that are not connected with the acts or omission of the defendant in this case. There can be no recovery for the plaintiff unless she establishes by a preponderance of the evidence that her injury or disability, if any, were proximally cause[d] by the defendant's negligence.

In this case the defendant claims and contends that the plaintiff was negligent, that is, that she failed to exercise ordinary care. I charge you that every person has a duty to use ordinary care for his or her own safety.

If you believe that the defendant has proven by a preponderance of the evidence that the plaintiff failed to use ordinary care and that this failure was the sole proximate cause of her injury, then the plaintiff cannot recover from the defendant.

Also, if the plaintiff by the exercise of ordinary care could have avoided the consequences caused by the defendant's negligence then the plaintiff is not entitled to recover.

However, the defendant is not relieved of liability even though the plaintiff may have contributed to the injury sustained.  The plaintiff's duty to exercise ordinary care to avoid the consequences of the defendant's negligence does not arise until the defendant's negligence exists and the plaintiff knew or in the exercise of ordinary care should have known of such negligence.

*Id.* at 187:7—188:23.

If you believe that the plaintiff is entitled to recover and further find that the plaintiff is to some degree responsible for the injury or damages claimed you should not make any monetary reduction because of the negligence, if any, of the plaintiff.

The Court will enter a judgment based on your verdict and if you find that the plaintiff was negligent in any degree the Court in entering judgment will reduce the total amount of monetary damages by the percentage of negligence which you attribute to the plaintiff.

If you find that the plaintiff's negligence was equal to or greater than that of the defendant's truck driver the plaintiff cannot recover any monetary damages. This means that the plaintiff is not entitled to recover any damages if you find that she is 50 percent or more responsible for the injury or damages claimed.

If you find that the plaintiff and the defendant['s] truck driver[ ] were negligent but that the plaintiff was less negligent than the defendant's truck driver then there could be a recovery for the plaintiff but the amount she receives, if any, would be reduced by the Court proportionate to the amount of fault that you attribute to the plaintiff.

*Id.* at 192:23—193:15.

Following deliberations, the jury returned a unanimous verdict in favor of Handley and awarded damages in the amount of $6,000,000.  The jury further found that Handley was negligent to some degree and apportioned the fault between the Parties with Werner being 60 percent responsible and Handley being 40 percent responsible.  (Docs. 160, 161.)

On inspection of the verdict form, Werner's counsel objected to the inclusion of ACE as a named defendant in the caption since ACE had been dismissed from the case, so the Court instructed the jurors to "return to the jury room and discuss whether or not when you

refer to defendant here you are referring to Werner Enterprises, Inc. in accordance with the Court's instructions and not Ace American Insurance Company." (Doc. 155 at 261:7-10.) When the jury returned, the foreperson announced that the verdict "was directly to Werner" only and not Werner and ACE, and no juror had a different understanding. *Id.* at 265-66. Werner argued that the inclusion of ACE on the verdict form was inherently prejudicial, moved for a mistrial on that basis, and asked that the verdict form not be filed until Werner had an opportunity to brief the motion for a mistrial.  (*See* Doc. 155 at 263, 269.)

After the trial, the Motion for JMOL A and Werner's motion for mistrial were pending before the Court.  The jury was excused, and the Court advised counsel to file briefs on Werner's motion for mistrial as well as on the Motion for JMOL A.  The Court further advised counsel that it would instruct the clerk not to file the verdict form until after the briefs were filed.  The Court informed counsel that it intended to rule on the motion for mistrial first and afterwards would enter a decision on the Motion for JMOL A.

On June 3, 2022, Defendant's Motion for Mistrial or New Trial (Doc. 144) ("Motion for Mistrial") was filed presenting Werner's arguments for mistrial based on the verdict form including the reference to the insurer.  Werner stated that the "motion is being filed at the direction of the Court following the discovery of insurance information going out to the jury. Defendant reserves the right to file a motion for new trial setting forth additional grounds under FRCP 59." (Mot. Mistrial 1, n.1.)  After Handley's response was filed, the Court entered an Order denying Werner's Motion for Mistrial.  (*See* Doc. 159.)  The Jury Verdict (Docs. 160, 161) was also entered on June 17, 2022, as well as the Order and Judgment (Docs. 162, 163) in favor of Handley awarding damages in the amount of $3,600,000.

On June 3, 2022, Werner filed its brief in support of the Motion for JMOL A, asserting that "Plaintiff has failed to prove not one, but two elements of negligence."  (Doc. 147 at 1.) First, Werner contends that Handley could have avoided the accident and that her injuries were caused solely by her own failure to exercise ordinary care and keep a proper lookout ahead.  (*Id.* at 1-2.)  Second, Werner asserts Handley failed to prove that Werner breached a duty owed to Handley.  (*Id.*)  In addition to responding to each argument, Handley contends that Werner did not raise the issue of sufficiency of evidence on the element of breach of duty

nor on the defense of avoidance and that Werner cannot add these new arguments to its Rule 50(b) motion.[5]  (Doc. 164.)

On July 15, 2022, Werner filed its Motion for JMOL B and New Trial, in which it now asserts three bases on which it is entitled to judgment as a matter of law:  "(1) Handley's claim is barred by the avoidance doctrine, (2) Handley failed to prove the element of causation, and (3) Handley failed to prove the element of breach."  (Doc. 170 at 3-4.)

Werner asserts it is entitled to a new trial because the verdict is against the great weight of the evidence or will result in a miscarriage of justice.  In particular, Werner asserts that the $6,000,000 judgment with 60 percent apportionment of liability to Werner is not supported by the evidence when taking into consideration an itemization of Handley's actions which, in Werner's opinion, reflect that Handley is solely responsible for her injuries.  (*Id.* at 7.)  Werner also asserts it is entitled to a new trial because "[t]he Court's inadvertent injection of liability insurance into the case constitutes harmful reversible error."  (*Id.*)  Werner states that it understands the Court has already denied its Motion for Mistrial based on this same issue.  (*Id.* at 7-8.)  However, Werner renews the basis of that motion "as a ground[ ] for granting a new trial under Rule 59(a)."  (*Id.*)

Werner's motions for judgment as a matter of law under Fed. R. Civ. P. 50(a) and (b) as well as its motion for new trial under Rule 59 are fully briefed and ripe for decision.

## II.   EVIDENCE AT TRIAL

### A.   <u>Plaintiff Lexie Handley</u>

In discussing the accident, Handley testified on direct that she did not remember everything that happened.  She was going home from the grocery store and was behind a silver vehicle.  The speed limit increased to 55 mph shortly after passing the 45-mph sign, and she decided to pass the silver vehicle.  (Doc. 153 at 127:11—18; 130:1—6.)  She recalls checking the lane beside and behind her and checking her blind spot.  (*Id.* at 129:15—24.)  She stated that she could have seen the tractor-trailer but does not remember.  (*Id.* at 22—25.)  Handley

---

[5] There appears to be some confusion between the Parties as to whether Werner's Rule 50(a) motion was still pending at the time the jury was excused.  As noted above, Werner's motions for mistrial and for judgment as a matter of law under Rule 50(a) were still pending and awaiting briefing after the jury was excused on May 26, 2022.

further testified that she has "a broken memory of the seconds leading up to [the accident]." (*Id.* at 127:19—21.)  If the tractor-trailer pulled out into the left fast lane as described by witness Albert Edmonds, Handley stated "I don't believe I could have avoided it."  (*Id.* at 129:10—14.)

On cross-examination, Werner's counsel pointed out differences in Handley's deposition testimony and her trial testimony attempting to show that Handley had changed lanes without determining that the left lane was clear in front of Handley.  (Doc. 153 at 143—153.)  With respect to the lane change, Handley testified on cross:

> Q. So before you started to change lanes you had no idea what was in the lane next to you, did you?
>
> A. I assumed before that I had looked to make sure nothing was in my way at that point but I don't have a solid memory.
>
> . . .
>
> Q. If there was something in that left lane you wouldn't have changed lanes into it?
>
> A. No sir.
>
> Q. And so you assumed it was clear, correct?
>
> A. I'm assuming now because I don't remember.

*Id.* at 146:11—23.  With respect to the actual impact, Handley testified:

> Q. Okay.  You didn't see the trailer that you ran into immediately before impact, correct?
>
> A. That was from what I've realized now.  Hmm, either I don't remember and it's from what I've been told or I did remember it that way.
>
> Q. You remember testifying at your deposition though –
>
> A. Yes sir.
>
> Q. – that you saw it at the very last second?
>
> A. I do remember that, yes, sir.
>
> Q. Okay.  And so the only other alternative I guess would be that you hadn't turned your head back around when you hit it?
>
> A. I'm not sure, sir.
>
> Q. Okay.  I just want – are there any other alternatives that you can think of?
>
> A. At this time, I'm not a hundred percent.  I think my body has tried to block out a lot of that memory because it wasn't the best time I've had.

. . .

Q. . . . You didn't say at that deposition that you didn't know whether you saw the trailer, right?  You very specifically said you saw the trailer?

A. Yes, sir.

Q. Okay.  Do you know if you were able to even tap your brakes before impact?

A. I don't believe I was able to.

*Id.* at 149:14—150:22.  Handley stated she did not remember being able to make any evasive maneuvers prior to hitting the trailer.  *Id.* at 153:16—19.

Handley also testified about the extensive injuries she suffered in the accident, including multiple broken bones, broken jaw and teeth, shattered face and brain injuries. Handley has had multiple surgeries.  *Id.* at 130—142.[6]

### B.    Albert Edmonds ("Edmonds")

Edmonds' testimony was presented at trial through a video deposition taken on February 26, 2021.[7]  On direct, when asked to describe what Edmonds saw prior to the accident, he described a tractor trailer driving without any signal indicating the direction the driver intended to travel.  (Doc. 36-5 at 12:5—6).  Edmonds testified:

A. I saw that he was trying to come in where I was.  Evidently he didn't show no kind of sign, no signal where he was going turn.  So I was saying to myself why is this – what's wrong with this guy, he don't know what he doing.

Q. Okay.

A. And that throwed me off right there.

Q. Okay.  And at that time was this truck in the turn lane?

A. It was like in – it was coming out of the turn lane and like he just make a deep going out, like going to the middle of the road like he don't know where he at.  I'm like why you doing that – that wide turn?  And that's when he tried to come in and I looked behind – I looked back – when I got ready to go on – go back towards Homersville, I look in the mirror and the only thing I saw is the car – the driver because the girl was going directly toward Valdosta way and

---

[6] Additional testimony regarding Handley's serious injuries was presented through Handley's father and sister as well as through Dr. Brunelli and Dr. Peavy.  As the nature and extent of Handley's injuries is not contested, the Court has not included further discussion of testimony related to those injuries.

[7] The transcript of Mr. Edmonds' video deposition is in the Court record as Exhibit 5 to Werner's Certificate of Need to File Discovery (Doc. 36-5) and the Court's references to his testimony are to that document.

it throwed her off.  I guess seeing a person driving like that, directly she went under the car.

*Id.* at 12:18—13:12.

Q. . . . Now, tell me this.  The tractor trailer, did it pull back out into the fast lane after it had been in the current lane?

A. Yeah.  It came out – that's what throwed the girl to go under the car.

Q. Did you see that?  The tractor trailer go into the turn lane and come back out and stop?

A. Yes, sir.

*Id.* at 16:19—17:1.  As the Court has previously noted in its Order (Doc. 159) denying Werner's Motion for Mistrial, during his testimony Edmonds made multiple statements testifying "that [Werner's] driver was obviously lost and that his driving was so erratic that [Edmonds] stopped and watched [Krisak] for a period of minutes before driving on.  According to [Edmonds], [Krisak's] driving was so erratic as to cause [Handley] to collide into the truck[.]"  (Doc. 159 at 10).

On cross-examination, Werner's counsel questioned Edmonds on the reason Edmonds stopped on the Bypass Road before turning right onto Valdosta Highway when he was not required to stop due to a red light, stop sign or oncoming traffic.  Edmond's replied:

A. I stopped because I did not know where his truck was turning.  I'm – he was turned going all out of the way.  I'm trying to figure out where he going to turn because I don't see no signal; and by that time he finally decided – figure out where – I got mad and I said, well, I'm going to go on, and by the time I got out onto the road – get on the road or going toward Homerville, I looked in my mirror and I saw this car went under the truck and I pulled over on the side of the road and got out of my car, went and see, make sure this child was not dead.

(Doc. 36-5 at 46:4—14.)  Edmonds' unwavering testimony under intense cross examination was that he stopped due to Krisak's erratic driving and appearance that Krisak was lost and unsure of where he was going.  (*Id.* at 45:11– 48:7; 50—51.)

Edmonds testified that he told a state patrol officer that he witnessed the accident, and the officer took down his name and address.  (*Id.* at 19:14—22.)  On cross, Edmonds testified that he did not talk to any other law enforcement officers.  (*Id.* at 79:1—10.)  When asked whether Edmonds gave his name and number to the Georgia State Patrolman, Edmonds'

testified: "Yeah, I gave it to them. They probably – I just gave them my number. I never gave my name or nothing." (*Id.* at 83:21—25.)

### C.   <u>Joseph Krisak</u>

At the time of the accident, Krisak had a commercial driver's license and drove tractor-trailers as an owner-operator for Werner. (Doc. 155 at 92:13—93:17.) On the morning of the accident, Krisak started his trip from Albany, Georgia.[8] (*Id.* at 93:24—25.) Krisak testified that he called his dispatcher that morning and was given a load to pick up for Werner. (*Id.* at 94:7—11.) The information for the name and address of a facility for a pickup comes through an electronic logging service. (*Id.* at 97:6—11.) The information provided includes GPS and a trucking route the drivers are expected to take so they do not go over low bridges or roads on which they are not allowed to travel. (*Id.* at 97:18—98:2.)

At trial, Krisak testified that he knew where he was going when he left Albany to pick up his load. (*Id.* at 98:11—13.) However, the customer had been bought out and its name was changed on the signage at the facility. (*Id.* at 97:6—17.) Krisak testified that when he arrived at the facility and saw that the name of the facility was different, he pulled into the lot, talked to the yard truck driver, and was told he was at the right place. Yet, the load he was to pick up for Werner was at the customer's other facility. Krisak testified that he gave his load information to an individual at the facility who provided him with a map and thorough explanation of where he needed to go to pick up the load. (*Id.* at 99:1—14.) To get to the other facility, about a half mile away, Krisak had to turn left back onto Valdosta Highway. He testified that he had his emergency flashers on from the time he turned onto Valdosta Highway. (*Id.* at 103—105.)

According to Krisak, he was getting into the center lane when he was rear-ended. (*Id.* at 106:1—12.) On cross, Krisak testified that he agreed one should get into the center turn lane and out of the fast lane of travel as soon as possible and there was nothing obstructing him from moving into the center lane. However, he stated he did not move over entirely into

---

[8] Krisak stated he started his trip from New Albany, Georgia. The Court assumes that Krisak meant Albany, Georgia, as there is not a city named New Albany in Georgia.

the center lane because "[y]ou're not supposed to ride in that center turn lane." (*Id.* at 113:2—19.)

### D.   Trooper Jerry Taylor

Trooper Jerry Taylor with the Georgia State Patrol responded to the accident scene and investigated the accident.  Taylor concluded that the sole contributing factor to the collision was that Plaintiff was "following too closely."

Taylor supplemented his police report on August 16, 2021, after he was asked to reassess whether Krisak had violated any Georgia driving laws, and Taylor concluded that it was reasonable for Krisak "to make a turn with [his] trailer in the left lane to keep from traveling on the wrong side of the road on Bypass Road when it turned."  Therefore, Taylor could not "change any contributing factors" for the collision.

Trooper Taylor did not interview Handley or Edmonds.  (*Id.* at 74:17—25; 76:19—77:6.)

## III.   STANDARD FOR MOTION FOR JUDGMENT AS A MATTER OF LAW.

### A.   Governing Law

The circuits are divided on whether, in a diversity case, federal courts should apply a federal or state test in determining the sufficiency of the evidence for submission to the jury. *See e.g.*, 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2525 (3d ed. Supp. 2022) [hereinafter Wright & Miller].  In Eleventh Circuit diversity cases, state law governs the substantive elements of plaintiff's case and defendant's defenses.  However, federal law governs whether the quantity and quality of the evidence is sufficient to raise a question of fact for the jury.  *See Clayton v. Travis*, 109 F.3d 669, 672 n.7 (11th Cir. 1997); *Shirey v. Louisville & Nashville R.R. Co.* 327 F.2d 549, 552 (5th Cir. 1964).

### B.   Georgia Law on Negligence

"Because this action is based on diversity, Georgia substantive standards of law must apply."  *Wilson v. TASER Int'l, Inc.*, 303 F. App'x 708, 715 (11th Cir. 2008).  The following elements are essential for a plaintiff to state a negligence claim in Georgia:

> (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this

standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

*Heston v. Lilly*, 546 S.E.2d 816, 818 (Ga. Ct. App. 2001) (internal quotation marks omitted) (citation omitted).

With respect to rear-end collisions, the Georgia Supreme Court has stated:

All drivers of vehicles using the highways are held to the exercise of due care. A leading vehicle has no absolute legal position superior to that of one following. Each driver must exercise ordinary care in the situation in which he finds himself. The driver of the leading vehicle must exercise ordinary care not to stop, slow up, nor swerve from his course without adequate warning to following vehicles of his intention so to do. The driver of the following vehicle, in his turn, must exercise ordinary care to avoid collision with vehicles, both those in front and those behind him. Just how close to a vehicle in the lead a following vehicle, ought, in the exercise of ordinary care, be driven, just what precautions a driver of such a vehicle must in the exercise of ordinary care take to avoid colliding with a leading vehicle which slows, stops, or swerves in front of him, just what signals or warnings the driver of a leading vehicle must, in the exercise of due care, give before stopping or slowing up of his intention to do so, may not be laid down in any hard and fast or general rule. In each case except when reasonable minds may not differ, what due care required, and whether it was exercised, is for the jury.

We conclude that 'reasonable minds' rarely agree on the issue of liability in rear-end collision cases.

*Atlanta Coca-Cola Bottling Co. v. Jones*, 224 S.E.2d 25, 27 (Ga. 1976) (internal quotation marks omitted) (citation omitted).

Under Georgia law, Werner has the burden of proving the affirmative defense of avoidance. *Erchul v. Starbucks Corp.*, 750 F. App'x 836, 840 (11th Cir. 2018).

Georgia has a well-established avoidance-of-consequences doctrine, as well as a separate comparative negligence rule, in O.C.G.A. § 51–11–7, which provides that:

If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.

O.C.G.A. § 51-11-7. Under the first sentence of § 51–11–7, which states the avoidance-of-consequences doctrine, a plaintiff must avoid the effect of the defendants' negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. He must make use of all his senses

in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him. Georgia courts have described the avoidance-of-consequences doctrine as Georgia's contributory negligence rule and a form of the last clear chance doctrine.

In contrast, the second sentence of § 51–11–7 embodies Georgia's comparative negligence rule that a plaintiff may recover if her own negligence contributed to her injury so long as the plaintiff's negligence was not equal to or greater than the defendant's negligence, but reduces the amount of recovery in proportion to the plaintiff's fault.

Under Georgia law, questions of whether an individual by ordinary care could have avoided the consequences of another's negligence are generally for the jury, except in plain, palpable, and undisputed cases.

*Currie v. Chevron U.S.A., Inc.*, 266 F. App'x 857, 871 (11th Cir. 2008) (alteration adopted) (internal quotation marks omitted) (citations omitted).

To *prove* avoidance, a defendant must show that the plaintiff knew or could in fact have discovered . . . the negligence and avoided it. *Except in plain, palpable, and undisputed cases where reasonable minds cannot* differ*, the question of whether a defendant is protected by [the] affirmative defense [of avoidance] should be left to the jury.*

*Erchul*, 750 F. App'x at 840 (omission in original) (emphasis added) (internal quotations marks omitted) (citations omitted).

### C.   Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50

"The federal courts follow the orthodox doctrine that questions of fact are for the jury and questions of law are for the court." Wright & Miller, *supra*, § 2521. Rule 50 "allows the court to remove from the jury's consideration cases or issues when the facts are sufficiently clear that the law requires a particular result." *Id.* Rule 50(a) provides:

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a).  The requirement in subsection (a)(2) that the moving party specify the grounds on which judgment is sought is mandatory.  "Its purpose is to apprise the trial court of the moving party's position to see if any defects can be corrected before the jury retires."  Wright & Miller, *supra*, § 2533.  In determining the sufficiency of the evidence, this Court, looking to federal law,

> "consider[s] all the evidence in the light most favorable to the non-moving party, and independently determine[s] whether the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict.
>
> "The non-moving party must provide more than a mere scintilla of evidence to survive a motion for summary judgment as a matter of law.  If the non-moving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof, then the entry of judgment as a matter of law is appropriate."

*Webb-Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1029 (11th Cir. 2008) (omission in original) (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1308 (11th Cir. 1998)).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

Insofar as the evidence considered in reviewing a motion for judgment as a matter of law, the Supreme Court stated in *Reeves v. Sanderson Plumbing Prods. Inc.* that:

> [A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as *that evidence supporting the moving party that is uncontradicted and unimpeached*, at least to the extent that that evidence comes from disinterested witnesses.

530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000) (emphasis added) (internal quotations omitted) (citations omitted), *quoted in Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1127 (11th Cir. 2016).

If the court does not grant a Rule 50(a) motion, the movant may file "a renewed motion," under Fed. R. Civ. P. 50(b).[9]  A Rule 50(b) motion is made after the case has been

---

[9] Fed. R. Civ. P. 50(b) provides:

submitted to the jury, "thereby insuring that a motion for such a judgment is used only to invite the district court to reexamine its decision not to direct a verdict as a matter of law, *not to reexamine facts found by the jury.*"  27A Fed. Proc., L. Ed. § 62:695 (Supp. 2022) (emphasis added).

> "The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion [under 50(a)]."  *Chaney v. City of Orlando,* 483 F.3d 1221, 1227 (11th Cir. 2007) (alteration in original) (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (2d ed. 1995)).  Thus, as with motions under Rule 50(a), the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is "legally sufficient . . . to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).

> In considering whether the verdict is supported by sufficient evidence, "the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party."  *Beckwith v. City of Daytona Beach Shores,* 58 F.3d 1554, 1560 (11th Cir. 1995).  And, as we have stressed, "[i]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses."  *Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 715 (11th Cir. 2002) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1186 (11th Cir. 2001)).

*McGinnis v. Am. Home Mortg. Servicing, Inc.,* 817 F.3d 1241, 1254 (11th Cir. 2016).

> In considering a Rule 50(b) motion after the jury verdict, only the sufficiency of the evidence matters.  The jury's findings are irrelevant. . . .  Judgment as a matter of law for a defendant is appropriate, when there is insufficient evidence to prove an element of the claim, which means that *no* jury reasonably could have reached a verdict for the plaintiff on that claim.  A Rule 50(b) motion should only be granted where reasonable jurors could not arrive at a contrary verdict.

---

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment— or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may:

    **(1)** allow judgment on the verdict, if the jury returned a verdict;

    **(2)** order a new trial; or

    **(3)** direct the entry of judgment as a matter of law.

*Cadle*, 838 F.3d at 1121 (emphasis added) (internal quotation marks omitted) (citations omitted).

As reflected by the plain language of Rule 50(b), the motion is a *renewal* of the Rule 50(a) motion. Thus, the Court can grant a Rule 50(b) motion only on the grounds advanced in the original Rule 50(a) motion. *McGinnis*, 817 F.3d at 1260. However, the Eleventh Circuit acknowledges that the rule is a harsh one and therefore, takes "a liberal view of what constitutes a motion for directed verdict." *Id.* at 1261 (internal quotation marks omitted) (citation omitted). The Eleventh Circuit recognizes

> [A]n exception to that rule when confronting grounds that are "closely related" to those raised in an initial JMOL motion. If the grounds argued in a motion under Rule 50(a) are "closely related" to those argued in a Rule 50(b) motion, then setting aside a jury's verdict is no surprise to the non-movant. . . . However, if the new and old grounds vary greatly . . . and the trial court relies upon the new grounds to set aside the jury's verdict, we will reverse.

*Id.*

Finally, Werner asserts it is entitled to judgment as a matter of law on its affirmative defense of avoidance. Werner has the burden of proof on this question. A motion for judgment as a matter of law is most often made against the party asserting a claim on the basis that the party failed to meet its burden of proof to establish its claim. "[G]ranting judgment as a matter of law for the party bearing the burden of proof is reserved for extreme cases." Wright & Miller, *supra*, § 2535.

> The standard in granting judgment as a matter of law for the claimant generally is similar to the standard for granting judgment as a matter of law against the claimant. The court must consider whether reasonable minds could differ. Yet the questions the trial judge must answer are not in all respects identical in the two contexts. . . .
>
> > Yet though a motion for directed verdict in favor of the proponent of an issue is cast in the same form as when made by the defending party, it requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect. He must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding. The ultimate conclusion that there is no genuine issue of fact depends not on a failure to prove at least enough so that the controverted fact can be inferred, but rather depends on making

> impossible any other equally strong inferences once the fact in issue is at least inferable.

Wright & Miller, *supra*, § 2535 (internal quotation marks omitted) (citations omitted); *see also U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1250 (11th Cir. 1997) ("Were we to accept the EEOC's argument, we would have to take the extreme step of directing a verdict in favor of the party having the burden of proof. *This can be done only when the evidence favoring the claimant is so one-sided as to be of overwhelming effect.*") (emphasis added).

## IV.   APPLICATION OF STANDARDS FOR MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 50.

Handley has the burden of proving by a preponderance of the evidence the four elements necessary to establish her negligence claim against Werner: (1) Werner had a duty of care;[10] (2) Werner breached that duty; (3) Werner's breach was more likely than not, the cause of the accident; and (4) Handley's injuries and damages are the result of the accident.

The Parties agree that the issue of whether Handley presented sufficient evidence to establish the element of causation that is necessary for her negligence action is before the Court. In its written Motions, Werner also raises the issues of whether Handley presented sufficient evidence to establish the element of breach of duty and further requests judgment as a matter of law on its defense of avoidance. Handley asserts that these grounds for granting Werner's motion for judgment as a matter of law were not raised at the trial when Werner presented its oral Rule 50(a) motion, and that Werner cannot raise them now.

### A.   Causation

At trial, Werner moved for judgment as a matter of law on the element of causation arguing that Handley did not present sufficient evidence to show a "causal connection between any alleged breach of Mr. Krisak and Werner and [Handley's] injuries. Instead, the cause of [Handley's] injuries was her own negligence and failure to keep a lookout ahead." (Doc. 154 at 117:7—16.) Werner argued at the close of Handley's case, that the evidence showed the accident would have happened regardless of how fast Krisak was driving. (Doc. 154 at

---

[10] Werner's counsel admitted at the trial that "Mr. Krisak through his employer Werner had a duty to the motoring public. That's not in dispute here." (Doc. 154 at 109:20—22.)

110:17—111:5.) Werner, however, misses the point that it is not how fast or slow Krisak was driving; rather, Handley's argument is that Krisak's tractor trailer was in the wrong lane, and that if Krisak had been fully in the center turn lane, the accident would not have happened.

The evidence is conflicting at the crucial minutes or seconds before the accident. However, there was sufficient evidence at trial that Krisak had not completely moved his tractor-trailer into the center turn lane, and that his trailer was in fact in the left travel lane. Trooper Taylor's police report reflects that Krisak's trailer was in the left travel lane. Edmond's, a disinterested driver, testified that Krisak was driving erratically, without any indicator lights, and that Krisak was moving from the center lane to the fast lane. Edmonds stated he found it difficult to determine where Krisak was going. In weighing the evidence and credibility of the witnesses, the jury was entitled to discount Krisak's testimony that his brake lights, signal lights or emergency blinkers were turned on so other drivers were aware of Krisak's intentions.

Even though Trooper Taylor's report reflects that the accident was Handley's fault because she was driving to close, he never interviewed Edmonds' to obtain his eyewitness statements. *Atlanta Coca-Cola Bottling*, 224 S.E.2d at 27 ("'reasonable minds' rarely agree on the issue of liability in rear-end collision cases.") While Edmonds' testimony may not be the most eloquent and is difficult to follow at times, Edmonds is adamant as to what he observed, and his testimony was unshakeable that Krisak was driving erratically immediately prior to the accident. It was not unreasonable for the jury to believe Edmonds' eyewitness testimony and find that "the Plaintiff suffered damages caused by the Defendant's negligence." (Doc. 161.)

Werner essentially asks the Court to take over the jury's duty to review the conflicting evidence, assess the credibility of the witnesses, ignore Handley's testimony explaining that because of severe brain injuries caused by the accident, she does not have a good memory of the accident, and ignore Edmonds' testimony regarding the erratic manner in which Krisak was driving. Rather than evaluating the evidence and logical inferences in the light most favorable to Handley, Werner would have the Court evaluate the evidence in the light most favorable to itself. The Court declines to do so because in determining the sufficiency of the evidence in ruling on a motion for judgment as a matter of law, the Supreme Court has instructed that "the court should give credence to the evidence favoring the nonmovant as

well as *that evidence supporting the moving party that is uncontradicted and unimpeached*, at least to the extent that that evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151 (emphasis added). The evidence in favor of Werner comes from its former employee, Krisak, who although not a party to this suit, was the driver of the vehicle involved in the accident. Whether Krisak's current status as Werner's former employee is sufficient to characterize him as a disinterested witness, his testimony is contradicted by Edmonds, who is a disinterested witness. Therefore, discounting Krisak's testimony under *Reeves*, the Court finds that Handley presented sufficient evidence on which the jury could (and did) reasonably find a causal connection between a breach of duty by Werner's employee and Handley's injuries.

### B.     <u>Breach of Duty</u>

In its written Motions, Werner asserts Handley failed to present sufficient evidence on the element of breach of duty. Handley asserts that prior to the case being submitted to the jury, Werner did not include this argument in its Rule 50(a) motion. The Court agrees with Handley. Werner's statement in its brief that "Plaintiff has failed to prove *not one, but two elements of negligence*[,]" reflects that it also knows it was adding an additional ground as support for its motion for judgment as a matter of law. (Doc. 147 at 1 (emphasis added).)

In any event, Edmonds' testimony as to Krisak's erratic driving without use of indicator lights and the truck's location in the left lane rather than turning from the center lane, is sufficient evidence upon which the jury could reasonably find that Werner breached a duty of care. "Each driver must exercise ordinary care in the situation in which he finds himself. The driver of the leading vehicle must exercise ordinary care not to stop, slow up, nor swerve from his course without adequate warning to following vehicles of his intention so to do." *Atlanta Coca-Cola Bottling*, 224 S.E.2d at 27.

### C.     <u>Defense of Avoidance</u>

"Avoidance" is an affirmative defense on which Werner has the burden of proof—it is not one of the elements Handley was required to prove to support her negligence action.[11]

---

[11] An avoidance defense presumes that Handley carried her burden of proof on all elements of the negligence action; and although Werner was negligent, Handley could have avoided her injuries. Werner's argument at trial, and throughout its briefing, is that Handley has *not* provided sufficient evidence to prove that Werner was negligent.

> To *prove* avoidance, a defendant must show that the plaintiff knew or could in fact have discovered . . . the negligence and avoided it.  Except in plain, palpable, and undisputed cases where reasonable minds cannot differ, the question of whether a defendant is protected by [the] affirmative defense [of avoidance] should be left to the jury.

*Erchul*, 750 F. App'x at 840 (omission in original) (internal quotations marks omitted) (citations omitted).  "[G]ranting judgment as a matter of law for the party bearing the burden of proof is reserved for extreme cases."  Wright & Miller, *supra*, § 2535; *see also U.S. E.E.O.C.*, 117 F.3d at 1250 (granting judgment as a matter of law in favor of a party having the burden of proof "*can be done only when the evidence favoring the claimant is so one-sided as to be of overwhelming effect.*" (emphasis added)).

Werner included in its briefs in support of the Motions an argument that Werner is entitled to judgment as a matter of law because Handley could have avoided the accident. Handley contends that Werner did not raise the issue of "avoidance" in its Rule 50(a) motion and is precluded from raising it in its Rule 50(b) motion.  *McGinnis*, 817 F.3d at 1260 (court can grant a Rule 50(b) motion only on the grounds advanced in the original Rule 50(a) motion).

To save its argument, Werner relies on the Eleventh Circuit exception that permits a district court to consider the new grounds raised in a Rule 50(b) motion if they are "closely related" to the grounds asserted in the movant's original Rule 50(a) motion so that setting aside the verdict is no surprise to the non-movant.  *Id.*  To support its position, Werner points to its oral Rule 50 argument that "There is no causal connection between any alleged breach of Mr. Krisak and Werner and [Handley's] injuries.  Instead, the cause of [Handley's] injuries was her own negligence and failure to keep a lookout ahead."[12]  (Doc. 166 at 4.)  Werner apparently contends that its reference to Handley's "own negligence and failure to keep a lookout ahead" are closely related so that the Court and Handley should not be surprised that Werner is also requesting judgment as a matter of law on a defense on which Werner bears the burden of proof.  The Court disagrees with Werner that these issues are closely related.

---

[12] To support its "closely related" argument, Werner contends that the Georgia Court of Appeals held in *Weston v. Dun Transp. & Stringer, Inc.*, 696 S.E.2d 279 (Ga. Ct. App. 2010) that avoidance and proximate cause are one in the same.  However, Werner did not provide a pinpoint supporting this statement nor does this Court agree with Werner's interpretation.

First, to request judgment as a matter of law on the affirmative defense of avoidance is inconsistent with Werner's stated basis for its Rule 50(a) motion, i.e., Handley did not provide sufficient evidence of causation to prove that Werner was negligent. Werner's new argument (for it is certainly a new argument insofar as Werner's Rule 50(a) motion) requires Werner to acknowledge that Handley carried her burden of proof on all elements of the negligence action; and although Werner was negligent, Handley could have avoided her injuries. It is disingenuous for Werner to attempt to raise this avoidance argument as an alternative that was clearly not made as part of his motion for judgment as a matter of law.

Further, the Court is in fact surprised. Werner's oral motion was based on Handley not presenting sufficient evidence on the element of causation to support Handley's negligence claim *against* Werner. At no point during its oral argument on its Rule 50(a) motion did Werner ask the Court to find that Werner was entitled to judgment as a matter of law on any affirmative defense. It did not state the elements necessary for it to prove a defense of avoidance. The mere argument that Handley did not prove causation does not amount to an assertion that Werner met its burden of proof on an avoidance defense—the defense is unnecessary if Werner was not negligent.

Even if the Court were to find that the issue of avoidance is closely related to the arguments Werner made in its oral Rule 50(a) motion, the Court finds that Werner is not entitled to judgment as a matter of law on this affirmative defense. In reviewing a Rule 50 motion made by a party bearing the burden of proof, the Court must find "not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, *but additionally that there is insufficient evidence for permitting any different finding.*" Wright & Miller, *supra*, § 2535 (emphasis added) (internal quotation marks omitted) (citations omitted). Werner has not met this burden.

In its reply brief, (Doc. 166 at 5), Werner quotes only a portion of O.C.G.A. § 51-11-7 which supports its theory that Handley is not entitled to recover because she could have avoided the accident if she had used ordinary care. Werner failed to include or analyze the second sentence of the statue: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover.

*In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.*"  O.C.G.A. § 51-11-7 (emphasis added).

Werner improperly attempts to place all of the elements of negligence—on which Handley has the burden of proof—and the elements of avoidance—on which it has the burden of proof—into one container, toss in the evidence from the trial, and, ignoring any conflicting evidence, extract only the evidence that is beneficial to itself.  Werner proposes that the Court conclude upon review of Werner's version of the evidence, that the jury's verdict should be voided and replaced by Werner's desired verdict as a matter of law.  Again, the Court declines to grant Werner's request as it is insufficiently supported by the evidence and is inconsistent with the applicable law.

The Court instructed the jury as to all the claims and defenses that are relevant in this case, including instructions on the issues of avoidance and comparative negligence.  While Werner does not agree with the verdict, the jury's verdict reflects that it considered all of the evidence and listened to and followed the Court's instructions and Georgia law by consistently finding that (1) Handley met her burden of proving that Werner's driver was negligent; (2) under the comparative negligence rule, Handley's own negligence contributed in part to her injuries and accounted for 40 percent of the liability; and (3) Werner failed to show that Handley, by use of ordinary care, could have avoided the accident caused by the negligence of Werner's driver.

The Court finds that Handley presented a legally sufficient evidentiary basis to support each element of her claim of negligence against Werner such that a reasonable jury could find in her favor at the trial of this matter.  The Court denies Werner's motions for judgment as a matter of law under Fed. R. Civ. P. 50(a) and (b).

## V.   MOTION FOR NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 59

When a party renews its motion for judgment as a matter of law under Rule 50(b), it may include in the motion an alternative or joint request for a new trial under Rule 59.  The Court may grant a new trial following a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).

"[T]his branch of the motion is tested by the same standards that would apply if the motion were made independently under Rule 59." Wright & Moore, *supra*, § 2539.

> A [party against whom a verdict has been entered] may also move for a new trial under Rule 59 on the grounds that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury. Thus, under Rule 59(a), a district court may, in its discretion, grant a new trial if in [the court's] opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

> Although a trial judge cannot weigh the evidence when confronted with a motion [for judgment] notwithstanding the verdict, in a motion for a new trial the judge is free to weigh the evidence.

*McGinnis*, 817 F.3d at 1254 (alterations in original) (internal quotation marks omitted) (citations omitted).

Werner asserts it is entitled to a new trial because the verdict is against the great weight of the evidence or will result in a miscarriage of justice. Specifically, Werner contends that the $6,000,000 judgment with 60 percent apportionment of liability to Werner is not supported by the evidence when Handley's actions are compared to the actions of Werner's employee. Further, although Werner acknowledges the Court has already ruled against its argument relating to the name of the liability insurer appearing on the verdict form, Werner asserts "[t]he Court's inadvertent injection of liability insurance into the case constitutes harmful reversible error." (Doc. 170 at 7.)

This Court has already fully addressed Werner's arguments that it was prejudiced because the insurer's name appeared in the caption of the jury verdict form when it denied Werner's Motion for Mistrial. Both parties fully briefed the issue. In its motion for new trial, Werner has not raised any additional arguments that were not addressed by the Court in its Order (Doc. 159) denying Werner's Motion for Mistrial. In addition, the Court notes that it specifically identified only Werner as the proper Defendant in its instructions to the jury in which it stated: "The plaintiff in this case is Lexie Handley. The defendant is Werner Enterprises, Inc. In these instructions I may refer to Ms. Handley as the plaintiff and to Werner Enterprises as the defendant." (Doc. 155 at 170:10—13.) Therefore, the Court denies

Werner's motion for new trial for the reasons and based on the law previously stated in its prior Order (Doc. 159) and as further explained herein.

Werner also argues that it is entitled to a new trial because the verdict is against the great weight of the evidence or that it will result in a miscarriage of justice. To support this argument, Werner states "[e]ntry of judgment against Werner based on a record that legally precludes Handley from recovering constitutes a miscarriage of justice." (Doc. 170 at 7.) Werner again essentially objects to the jury's findings that Werner is 60 percent responsible for Handley's injuries particularly where, in Werner's view, Handley was speeding, tailgating and blindly changed lanes. As the Court found in discussing Werner's arguments in support of its motions for judgment as a matter of law, there is sufficient evidence to support the jury's findings, the jury was entitled to weigh the credibility of the witnesses, draw reasonable inferences, and to apportion the negligence of each party. A party is not entitled to a new trial because it disagrees with the jury's verdict.

## VI.   CONCLUSION

After full review of the evidence and arguments of counsel, and for the reasons stated above, the Court finds that Handley met her burden to present sufficient evidence on each element of her negligence cause of action against Werner to support the jury's verdict.

Accordingly, **IT IS HEREBY ORDERED** that Werner's Motions for Judgment as a Matter of Law under Fed. R. Civ. P. 50(a) are hereby **DENIED**. It is further **ORDERED** that Werner's Rule 50(b) Motion for Judgment as a Matter of Law or in the Alternative Rule 59 Motion for New Trial (Doc. 170) is **DENIED**.

This 7th day of February 2023.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**